AMERICAN NATIONAL RED CROSS *v.* S. G. ET AL.

No. 91–594.   Argued March 3, 1992—Decided June 19, 1992

SOUTER, J., delivered the opinion of the Court, in which WHITE, BLACK-MUN, STEVENS, and THOMAS, JJ., joined. SCALIA, J., filed a dissenting opinion, in which REHNQUIST, C. J., and O'CONNOR and KENNEDY, JJ., joined, *post,* p. 265.

*Roy T. Englert, Jr.,* argued the cause for petitioner. With him on the briefs were *Kenneth S. Geller, Bruce M. Chadwick, Karen Shoos Lipton,* and *Edward L. Wolf.*

*Ronald J. Mann* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Starr, Assistant Attorney General Gerson,* and *Deputy Solicitor General Roberts.*

*Gilbert Upton* argued the cause for respondents. With him on the brief were *Gary B. Richardson* and *David P. Slawsky.**

JUSTICE SOUTER delivered the opinion of the Court.

The Charter of the American National Red Cross authorizes the organization "to sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States." 33 Stat. 600, as amended, 36 U. S. C. §2. In this case we consider whether that "sue and be sued" provision confers original jurisdiction on federal courts over all cases to which the Red Cross is a party, with the consequence that the organization is thereby authorized to remove from state to federal court any state-law action it is defending. We hold that the clause does confer such jurisdiction.

I

In 1988 respondents filed a state-law tort action in a court of the State of New Hampshire, alleging that one of respond-

―――――――――

*Christopher V. Tisi* and *Bob Gibbins* filed a brief for the Association of Trial Lawyers of America as *amicus curiae* urging affirmance.

ents had contracted AIDS from a transfusion of contaminated blood during surgery, and naming as defendants the surgeon and the manufacturer of a piece of medical equipment used during the procedure. After discovering that the Red Cross had supplied the tainted blood, respondents sued it, too, again in state court, and moved to consolidate the two actions. Before the state court decided that motion, the Red Cross invoked the federal removal statute, 28 U. S. C. § 1441, to remove the latter suit to the United States District Court for the District of New Hampshire. The Red Cross claimed federal jurisdiction based both on the diversity of the parties and on the "sue and be sued" provision of its charter, which it argued conferred original federal jurisdiction over suits involving the organization. The District Court rejected respondents' motion to remand the case to state court, holding that the charter provision conferred original federal jurisdiction. See District Court order of May 24, 1990, reprinted at App. to Pet. for Cert. 18a–25a.

On interlocutory appeal, the United States Court of Appeals for the First Circuit reversed. 938 F. 2d 1494 (1991). The Court of Appeals compared the Red Cross Charter's "sue and be sued" provision with analogous provisions in federal corporate charters previously examined by this Court, and concluded that the relevant language in the Red Cross Charter was similar to its cognates in the charter of the first Bank of the United States, construed in *Bank of the United States* v. *Deveaux*, 5 Cranch 61 (1809), and in that of the federally chartered railroad construed in *Bankers Trust Co.* v. *Texas & Pacific R. Co.*, 241 U. S. 295 (1916), in neither of which cases did we find a grant of federal jurisdiction. The Court of Appeals distinguished *Osborn* v. *Bank of United States*, 9 Wheat. 738 (1824), where we reached the opposite result under the charter of the second Bank of the United States, the Court of Appeals finding it significant that the second Bank's authorization to sue and be sued spoke of a particular federal court and of state courts already possessed

of jurisdiction. The Court of Appeals also discounted the Red Cross's reliance on our opinion in *D'Oench, Duhme & Co.* v. *Federal Deposit Ins. Corp.*, 315 U. S. 447 (1942), concluding that in that case we had "not[ed] only incidentally" that federal jurisdiction was based on the "sue and be sued" clause in the FDIC's charter. See 938 F. 2d, at 1497–1499. The Court of Appeals found support for its conclusion in the location of the Red Cross Charter's "sue and be sued" provision in the section "denominat[ing] standard corporate powers," *id.*, at 1499, as well as in legislative history of the amendment to the Red Cross Charter adding the current "sue and be sued" language, and in the different form of analogous language in other federal corporate charters enacted contemporaneously with that amendment, see *id.*, at 1499–1500.

We granted certiorari, 502 U. S. 976 (1991), to answer this difficult and recurring question.[1]

## II

Since its founding in 1881 as part of an international effort to ameliorate soldiers' wartime suffering, the American Red Cross has expanded its activities to include, among others, the civilian blood-supply services here at issue. The organization was reincorporated in 1893, and in 1900 received its first federal charter, which was revised in 1905. See American National Red Cross, Report of the Advisory Committee on Organization 4 (1946) (hereinafter Advisory Report), reprinted at App. to Brief for Appellants in No. 90–1873 (CA1), pp. 94, 101.

---

[1] Although more than 40 District Court cases have considered this issue, no result clearly predominates. Compare Pet. for Cert. 10, n. 4 (listing cases finding jurisdictional grant in Red Cross Charter's "sue and be sued" provision), with *id.*, at 11, n. 5 (listing cases reaching opposite conclusion). Reflecting this confusion, the only other Court of Appeals to consider this issue decided differently from the First Circuit. See *Kaiser* v. *Memorial Blood Center of Minneapolis, Inc.*, 938 F. 2d 90 (CA8 1991).

The 1905 charter empowered the Red Cross "to sue and be sued in courts of law and equity within the jurisdiction of the United States." Act of Jan. 5, 1905, ch. 23, § 2, 33 Stat. 600. At that time the provision would not have had the jurisdictional significance of its modern counterpart, since the law of the day held the involvement of a federally chartered corporation sufficient to render any case one "arising under" federal law for purposes of general statutory federal-question jurisdiction. See *Pacific Railroad Removal Cases*, 115 U. S. 1, 14 (1885). In 1925, however, Congress restricted the reach of this jurisdictional theory to federally chartered corporations in which the United States owned more than one-half of the capital stock. Act of Feb. 13, 1925, ch. 229, § 12, 43 Stat. 941; codified as amended at 28 U. S. C. § 1349.[2] Since the effect of the 1925 law on nonstock corporations like the Red Cross is unclear, see, *e. g., C. H.* v. *American Red Cross*, 684 F. Supp. 1018, 1020–1022 (ED Mo. 1987) (noting split in authority over whether § 1349 applies to nonstock corporations),[3] its enactment invested the charter's "sue and be sued" clause with a potential jurisdiction significance previously unknown to it.

Its text, nevertheless, was left undisturbed for more than 20 years further, until its current form, authorizing the Red Cross "to sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States," took shape with the addition of the term "State or Federal" to the 1905 language, as part of an overall revision of the organization's charter and bylaws. See Act of May 8, 1947,

---

[2] Congress had previously overruled much of *Pacific Railroad Removal Cases*, 115 U. S. 1 (1885), by withdrawing federal jurisdiction over cases involving federally chartered railroads based solely on the railroad's federal incorporation, see Act of Jan. 28, 1915, ch. 22, § 5, 38 Stat. 803, 804, a limitation irrelevant for our purposes.

[3] We do not address this question, as we hold that the "sue and be sued" provision of the Red Cross's Charter suffices to confer federal jurisdiction independently of the organization's federal incorporation.

Pub. L. 80–47, § 3, 61 Stat. 80, 81. It is this language upon which the Red Cross relies, and which the Court of Appeals held to have conferred no federal jurisdiction.

## III

### A

As indicated earlier, we do not face a clean slate. Beginning with Chief Justice Marshall's opinion in 1809, we have had several occasions to consider whether the "sue and be sued" provision of a particular federal corporate charter conferred original federal jurisdiction over cases to which that corporation was a party, and our readings of those provisions not only represented our best efforts at divining congressional intent retrospectively, but have also placed Congress on prospective notice of the language necessary and sufficient to confer jurisdiction. See, e. g., *United States* v. *Merriam*, 263 U. S. 179, 186 (1923) (Congress presumed to intend judicially settled meaning of terms); *Cannon* v. *University of Chicago*, 441 U. S. 677, 696–698 (1979) (presuming congressional knowledge of interpretation of similarly worded earlier statute). Those cases therefore require visitation with care.

In *Deveaux*, we considered whether original federal jurisdiction over suits by or against the first Bank of the United States was conferred by its charter. The language in point authorized the Bank "'to sue and be sued, plead and be impler ˑd, answer and be answered, defend and be defended, in ˑurts of record, or any other place whatsoever,'" 5 Cranch, at 85. In the opinion written by Chief Justice Marshall, the Court held this language to confer no federal jurisdiction, reading it as a mere grant to the bank of the normal corporate capacity to sue, *id.*, at 85–86. The Court contrasted the charter's "sue and be sued" provision with one authorizing the institution of certain suits against the bank's officers "in any court of record of the United States, or of

*[sic]* either of them," a provision the Court described as "expressly authoriz[ing] the bringing of that action in the federal or state courts," *id.*, at 86. The Chief Justice concluded that this latter provision "evince[d] the opinion of congress, that the right to sue does not imply a right to sue in the courts of the union, unless it be expressed," *ibid.*

The same issue came to us again 15 years later in *Osborn.* By this time Congress had established the second Bank of the United States, by a charter that authorized it "to sue and be sued, plead and be impleaded, answer and be answered, defend and be defended, in all state courts having competent jurisdiction, and in any circuit court of the United States." Act of Apr. 10, 1816, ch. 44, §7, 3 Stat. 266, 269. In its interpretation of this language, the Court, again speaking through Chief Justice Marshall, relied heavily on its *Deveaux* analysis, and especially on the contrast developed there between the first bank charter's "sue and be sued" provision and its provision authorizing suits against bank officers. See *Osborn*, 9 Wheat., at 818. Holding that the language of the second bank's charter "could not be plainer by explanation," *ibid.*, in conferring federal jurisdiction, the *Osborn* Court distinguished *Deveaux* as holding that "a general capacity in the Bank to sue, without mentioning the courts of the Union, may not give a right to sue in those courts," 9 Wheat., at 818.

With the basic rule thus established, our next occasion to consider the issue did not arise until *Bankers Trust*, nearly a century later. The federal charter considered in that case authorized a railroad corporation "to sue and be sued, plead and be impleaded, defend and be defended, in all courts of law and equity within the United States." Act of Mar. 3, 1871, ch. 122, §1, 16 Stat. 573, 574. Testing this language against that construed in *Deveaux* and *Osborn*, we concluded that it "d[id] not literally follow" its analogues considered in either of the earlier cases, 241 U. S., at 304, but held, never-

theless, that it had "the same generality and natural import" as the clause contained in the first Bank charter. Thus, we followed *Deveaux* and found in the failure to authorize federal court litigation expressly no grant of federal jurisdiction. 241 U. S., at 304–305.

Last came *D'Oench, Duhme,* where we held that the FDIC's charter granted original federal jurisdiction. That jurisdiction was not, we explained, "based on diversity of citizenship. Respondent, a federal corporation, brings this suit under an Act of Congress authorizing it to sue or be sued 'in any court of law or equity, State or Federal.'" 315 U. S., at 455–456 (citation and footnote omitted). It is perfectly true, as respondents stressed in argument, that in an accompanying footnote we quoted without comment another part of the same statute, providing that "'[a]ll suits of a civil nature at common law or in equity to which the Corporation shall be a party shall be deemed to arise under the laws of the United States: *Provided,* That any such suit to which the Corporation is a party in its capacity as receiver of a State bank and which involves only the rights or obligations of depositors, creditors, stockholders and such State bank under State law shall not be deemed to arise under the laws of the United States.'" *Id.,* at 455–456, n. 2.[4] The footnote did not, however, raise any doubt that the Court held federal jurisdiction to rest on the terms of the "sue and be sued" clause. Quite the contrary, the footnote's treatment naturally expressed the subordinate importance of the provision it quoted. While as a state bank's receiver the FDIC might lose the benefit of the deemer clause as a grant of federal

---

[4] The "sue and be sued" language was originally enacted in the statute creating the FDIC, see Banking Act of 1933, ch. 89, § 8, 48 Stat. 162, 172, and was reenacted in the 1935 amendments to that statute, see Banking Act of 1935, ch. 614, § 101, 49 Stat. 684, 692. The 1935 amendments also enacted for the first time the deemer provision we quoted in footnote 2 of our opinion in *D'Oench, Duhme & Co.* v. *FDIC,* 315 U. S. 447, 455 (1942). See 49 Stat. 684, 692.

jurisdiction, the "sue and be sued" clause would settle the jurisdictional question conclusively, in any case.[5]

## B

These cases support the rule that a congressional charter's "sue and be sued" provision may be read to confer federal court jurisdiction if, but only if, it specifically mentions the federal courts. In *Deveaux*, the Court found a "conclusive argument" against finding a jurisdictional grant in the "sue and be sued" clause in the fact that another provision of the same document authorized suits by and against bank officers "in any court of record of the United States, or of *[sic]* either of them . . . ." See 5 Cranch, at 86. In contrasting these two provisions the *Deveaux* Court plainly intended to indicate the degree of specificity required for a jurisdictional grant.[6] That is certainly how the *Osborn* Court understood *Deveaux*, as it described the latter provision as an "express grant of jurisdiction," 9 Wheat., at 818, in contrast to the first Bank charter's "sue and be sued" provision, which, "without men-

---

[5] Respondents argue that the parties in *D'Oench, Duhme* did not litigate the jurisdictional issue. See Brief for Respondents 18–22. But the parties' failure to challenge jurisdiction is irrelevant to the force of our holding on that issue. See, *e. g., FW/PBS, Inc.* v. *Dallas*, 493 U. S. 215, 231 (1990) (federal courts have independent obligation to examine their own jurisdiction); see also *Ex parte Bollman*, 4 Cranch 75, 100 (1807) (Marshall, C. J.) (giving controlling weight to previous jurisdictional holding by Court even though parties to previous case had not raised jurisdictional issue).

[6] The dissent reads *Deveaux* as distinguishing between these two provisions not on this basis, but rather on the ground that the provision authorizing suits against bank officers allowed the bringing of a particular cause of action. See *post*, at 270. That reading might be possible if Chief Justice Marshall had not nipped it in the bud. He did not explain the difference between the jurisdictional significance of the two clauses in question by saying that jurisdiction may be granted only in provisions referring to courts in which causes of action could be brought. He explained it simply by inferring, from the drafting contrasts, "the opinion of congress that the right to sue does not imply the right to sue in the courts of the union *unless it be expressed*." *Deveaux*, 5 Cranch, at 86 (emphasis added).

tioning the courts of the Union," *ibid.,* was held merely to give the Bank "a general capacity . . . to sue [but not] a right to sue in those courts," *ibid.*[7]   The *Osborn* Court thus found a jurisdictional grant sufficiently stated in the second Bank charter's "sue and be sued" provision, with its express federal reference, remarking that "[t]o infer from *[Deveaux]* that words expressly conferring a right to sue in those courts do not give the right, is surely a conclusion which the premises do not warrant." *Ibid.*[8]

Applying the rule thus established, in *Bankers Trust* we described the railroad charter's "sue and be sued" provision, with its want of any reference to federal courts, and, holding it up against its analogues in *Deveaux* and *Osborn,* we found

---

[7] The dissent accuses us of repeating what it announces as Chief Justice Marshall's misunderstanding, in *Osborn,* of his own previous opinion in *Deveaux.*   See *post,* at 271.   We are honored.

[8] Contrary to respondents' argument, our cases do not support a requirement that federal jurisdiction under a "sue and be sued" clause requires mention of the specific federal court on which it is conferred.   *D'Oench, Duhme,* of course, bars any such reading.   Nor would *Osborn* v. *Bank of United States,* 9 Wheat. 738 (1824), require such a specification even if *D'Oench, Duhme* were not on the books.   When the second Bank was chartered, two sets of federal courts, the Circuit Courts and the District Courts, shared overlapping original federal jurisdiction.   See, *e. g.,* E. Surrency, History of the Federal Courts 61 (1987).   If (as apparently was the case) the framers of the second Bank's charter wished to provide that all suits in federal court involving the Bank be brought in one set of courts, it would have been necessary for any jurisdictional grant to specify which set of federal trial courts was being invested with jurisdiction.   This need no longer exists, and the means chosen by the drafters of the early charters to resolve that problem should not be thought significant in resolving the very different issue before us today.   Moreover, the larger part of the Court's analysis in *Osborn* speaks only of the charter's mention of federal courts, not its specification of the Circuit Courts in particular.   See 9 Wheat., at 817–818.   The charter's specification of those courts would have made it natural for the *Osborn* Court to indicate its reliance on that narrower ground, had it believed such specificity to be required.   The fact that it did not so indicate is strong evidence that the Court thought it unnecessary.

it closer to the former.[9]   Finally, in *D'Oench, Duhme* we based our finding of jurisdiction on the "sue and be sued" provision of the FDIC charter, which mentioned the federal courts in general, but not a particular federal court.

The rule established in these cases makes it clear that the Red Cross Charter's "sue and be sued" provision should be read to confer jurisdiction.   In expressly authorizing the organization to sue and be sued in federal courts, using language resulting in a "sue and be sued" provision in all relevant respects identical to one on which we based a holding of federal jurisdiction just five years before, the provision extends beyond a mere grant of general corporate capacity to sue, and suffices to confer federal jurisdiction.

## IV

Respondents offer several arguments against this conclusion, none of which we find availing.

---

[9] The dissent is playful in manufacturing a conflict between our synthesis of the cases and the opinion in *Bankers Trust Co.* v. *Texas and Pacific R. Co.*, 241 U. S. 295 (1916).   See *post*, at 272.   The dissent first quotes the Court's construction in the *Bankers Trust* opinion, that the clause at issue there implied no jurisdictional grant, but simply rendered the corporation " 'capable of suing and being sued by its corporate name in any court of law or equity—Federal, state or territorial—whose jurisdiction as otherwise competently defined was adequate to the occasion.' "   *Post*, at 272 (emphasis omitted) (quoting 241 U. S., at 303).   The dissent then concludes that "[t]hat paraphrasing of the railroad charter, in terms that would spell jurisdiction under the key the Court adopts today, belies any notion that *Bankers Trust* was using the same code book." *Post*, at 273.   The dissent thus attempts to set up a conflict between our analysis and the result in *Bankers Trust*, by suggesting that that Court's interpretation of the provision (*i. e.*, to confer capacity to sue in courts including federal ones) should itself be subject to a second-order interpretation, which under our analysis might require a holding of jurisdiction, the conclusion rejected by the *Bankers Trust* Court.   This "interpretation of an interpretation" methodology is simply illegitimate, originating not in our opinion but in the dissent's whimsy.   Like our predecessors, we are construing a charter, not a paraphrase.

## A

First, we can make short work of respondents' argument that the charter's conferral of federal jurisdiction is nevertheless subject to the requirements of the "well-pleaded complaint" rule (that the federal question must appear on the face of a well-pleaded complaint) limiting the removal of cases from state to federal court. See Brief for Respondents 38–46. Respondents erroneously invoke that rule outside the realm of statutory "arising under" jurisdiction, *i. e.*, jurisdiction based on 28 U. S. C. § 1331, to jurisdiction based on a separate and independent jurisdictional grant, in this case, the Red Cross Charter's "sue and be sued" provision. The "well-pleaded complaint" rule applies only to statutory "arising under" cases, see *Verlinden B. V.* v. *Central Bank of Nigeria,* 461 U. S. 480, 494 (1983); see also 13B C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3566, pp. 82–83 (2d ed. 1984); Chemerinsky & Kramer, Defining the Role of the Federal Courts, 1990 B. Y. U. L. Rev. 67, 75, n. 17; it has no applicability here.

## B

Respondents also claim that language used in congressional charters enacted closely in time to the 1947 amendment casts doubt on congressional intent thereby to confer federal jurisdiction over cases involving the Red Cross. Respondents argue that the 1948 amendment to the charter of the Commodity Credit Corporation (CCC), the 1947 amendment to the charter of the Federal Crop Insurance Corporation (FCIC), and the 1935 amendment to the FDIC's charter, each of which includes explicit grants of federal jurisdiction, together demonstrate "a practice of using clear and explicit language to confer federal jurisdiction over corporations [Congress] had created." Brief for Respondents 27.

The argument does not hold up. The CCC amendment is irrelevant to this enquiry, as it conferred exclusive, rather than concurrent, federal jurisdiction. See Act of June 29,

1948, ch. 704, §4, 62 Stat. 1070. There is every reason to expect Congress to take great care in its use of explicit language when it wishes to confer exclusive jurisdiction, given our longstanding requirement to that effect.[10] Its employment of explicitly jurisdictional language in the CCC's case thus raises no suggestion that its more laconic Red Cross amendment was not meant to confer concurrent federal jurisdiction.

Nor do the other two enactments support respondents' argument. The statutes were passed 12 years apart and employed verbally and doctrinally distinct formulations. Compare Banking Act of 1935, ch. 614, §101, 49 Stat. 684, 692 (providing that suits involving FDIC "shall be deemed to arise under the laws of the United States"), with Act of Aug. 1, 1947, ch. 440, §7, 61 Stat. 719 (providing that FCIC "may sue and be sued in its corporate name in any court of record of a State having general jurisdiction, or in any United States district court, and [that] jurisdiction is hereby conferred upon such district court to determine such controversies without regard to the amount in controversy").[11] These differences are not merely semantic: the jurisdictional effect of the FDIC's provision depends on the 28 U. S. C. §1331 grant of general federal-question jurisdiction, while the

---

[10] See *Claflin* v. *Houseman*, 93 U. S. 130, 136 (1876) ("[O]ur judgment [has] been . . . to affirm [concurrent state-court] jurisdiction, where it is not excluded by express provision, or by incompatibility in its exercise arising from the nature of the particular case"); see also *Charles Dowd Box Co.* v. *Courtney*, 368 U. S. 502, 508 (1962) (*Claflin's* analysis of this question "has remained unmodified through the years").

[11] Respondents do not repeat the Court of Appeals's argument that the original language of the FCIC charter tracked in all relevant respects that in the Red Cross's post-1947 charter, and that Congress's later amendment of the FCIC charter to make jurisdiction more explicit thus implicitly suggests that Congress considered that language insufficient to confer jurisdiction. See 938 F. 2d 1494, 1500 (CA1 1991). We note here only that the Red Cross adequately rebuts that argument. See Brief for Petitioner 42–43.

FCIC's provision functions independently of § 1331. These differences of both form and substance belie respondents' claim of a coherent drafting pattern against which to judge the ostensible intent behind the Red Cross amendment.

If, indeed, respondents' argument could claim any plausibility, it would have to be at the cost of ignoring the 1942 *D'Oench, Duhme* opinion citing the FDIC charter's "sue and be sued" provision as the source of federal jurisdiction in that case. See 315 U. S., at 455. If the "sue and be sued" clause is sufficient for federal jurisdiction when it occurs in the same charter with the language respondents claim to be at odds with its jurisdictional significance, it is certainly sufficient standing alone. In any event, the fact that our opinion in *D'Oench, Duhme* was handed down before the 1947 amendment to the Red Cross Charter indicates that Congress may well have relied on that holding to infer that amendment of the Red Cross Charter's "sue and be sued" provision to make it identical to the FDIC's would suffice to confer federal jurisdiction. See, *e. g., Cannon*, 441 U. S., at 696–697. Congress was, in any event, entitled to draw the inference.

C

Respondents would have us look behind the statute to find quite a different purpose when they argue that the 1947 amendment may have been meant not to confer jurisdiction, but to clarify the Red Cross's capacity to sue in federal courts where an independent jurisdictional basis exists. See Brief for Respondents 23–27. The suggestion is that Congress may have thought such a clarification necessary after passage of the 1925 statute generally bringing an end to federal incorporation as a jurisdictional basis. See 28 U. S. C. § 1349.[12]  But this suggestion misconstrues § 1349 as

---

[12] See Act of Feb. 13, 1925, ch. 229, § 12, 43 Stat. 941 (currently codified at 28 U. S. C. § 1349). The exception, for federally chartered corporations over one-half owned by the United States, is irrelevant to our enquiry. See n. 3, *supra*.

somehow affecting a federally chartered corporation's capacity to sue, when by its own terms it speaks only to jurisdiction. If, then, respondents are correct that the enactment of § 1349 motivated the 1947 amendment, that motivation cuts against them, given that § 1349 affected only jurisdiction.

The legislative history of the 1947 amendment cuts against them, as well, to the extent it points in any direction.[13] Congress's revision of the charter was prompted by, and followed, the recommendations of a private advisory committee of the Red Cross. See H. R. Rep. No. 337, 80th Cong., 1st Sess., 6 (1947) ("[The 1947 amendment] was drafted as the result of recommendations made by [the Advisory committee] . . . . [They] incorporat[e] the recommendations of th[at] advisory committee . . ."); S. Rep. No. 38, 80th Cong., 1st Sess., 1 (1947) ("The present legislation incorporates, in the main, the recommendations of the [A]dvisory committee"). The Advisory Report had recommended that "[t]he charter should make it clear that the Red Cross can sue and be sued in the Federal Courts," reasoning that "[t]he Red Cross has in several instances sued in the Federal Courts, and its powers in this respect have not been questioned. However, in view of the limited nature of the jurisdiction of the Federal Courts, it seems desirable that this right be clearly stated in the Charter." Advisory Report 35–36, reprinted at App. to Brief for Appellants in No. 90–1873, at 132–133.

---

[13] The only debate on the 1947 amendment to the charter's "sue and be sued" provision occurred at a Senate Committee hearing. See Hearings on S. 591 before the Senate Committee on Foreign Relations, 80th Cong., 1st Sess., 10 (1947). The only two relevant comments, both made by Senator George, appear to be mutually contradictory on the matter at issue here. At one point Senator George said: "I think the purpose of the bill is very clear, and that is to give the jurisdiction in State courts and Federal courts, and I think we had better leave it there," *ibid.* Later, however, he stated: "I think there might be some question about the right of a Federal corporation to be sued in a State court. I thought that was, and I still think it is, the purpose of this provision," *id.,* at 11.

The Advisory Report's explicit concern with the limited jurisdiction of the federal courts indicates that the recommended change, which prompted the amendment to the "sue and be sued" provision, spoke to jurisdiction rather than capacity to sue. Against this, respondents argue only that the Advisory Report's use of the words "can" and "power" indicate concern with the latter, not the former. See Brief for Respondents 25. This is fine parsing, too fine to overcome the overall jurisdictional thrust of the Report's recommendation.

In a final look toward the text, respondents speculate that the 1947 amendment can be explained as an attempt to clarify the Red Cross's capacity to enter the federal courts under their diversity jurisdiction. See Brief for Respondents 25–26, 29. The argument turns on the theory that federally chartered corporations are not citizens of any particular State, and thus may not avail themselves of diversity jurisdiction. See id., at 26 (quoting Walton v. Howard University, 683 F. Supp. 826, 829 (DC 1987)). Respondents completely fail, however, to explain how the addition of the words "State or Federal" to the "sue and be sued" provision might address this claimed jurisdictional problem. Indeed, the 1947 amendment, by specifying the particular courts open to the Red Cross, as opposed to the Red Cross's status as a party, seems particularly ill-suited to rectifying an asserted party-based jurisdictional deficiency.[14]

---

[14] At oral argument respondents carried the suggestion a further step by speculating that the 1947 amendment could be explained as an attempt to ensure the Red Cross's access to federal courts when diversity jurisdiction existed, due to concern, presumably present until our 1949 decision in National Mut. Ins. Co. v. Tidewater Transfer Co., 337 U. S. 582, about the constitutionality of the 1940 statute giving District of Columbia-chartered corporations the same rights to sue in diversity as state-chartered corporations. See Tr. of Oral Arg. 30–31. But the speculation, if sound, would prove too much. For on this theory Congress would have been hedging against a constitutional problem of diversity jurisdiction by resorting to a special grant of jurisdiction to cover the Red Cross, which is

Perhaps most obviously, respondents' argument violates the ordinary sense of the language used, as well as some basic canons of statutory construction. The 1905 charter, authorizing the Red Cross "to sue and be sued in courts of law and equity within the jurisdiction of the United States," simply cannot be read as failing to empower the Red Cross to sue in federal courts having jurisdiction. That fact, when combined with the Advisory Report's justification of the 1947 amendment by reference to federal courts' limited jurisdiction, see *supra*, leaves it extremely doubtful that capacity to sue *simpliciter* motivated that amendment. Indeed, the Red Cross's clear preamendment capacity to sue in federal courts calls into play the canon of statutory construction requiring a change in language to be read, if possible, to have some effect, see, *e. g., Brewster* v. *Gage*, 280 U. S. 327, 337 (1930); 2A N. Singer, Sutherland on Statutory Construction § 46.06 (5th rev. ed. 1992), a rule which here tugs hard toward a jurisdictional reading of the 1947 amendment.[15]

---

exactly what the Red Cross maintains was intended by following *D'Oench, Duhme* and *Osborn.*

Respondents complain that the Red Cross's theory is of recent vintage, citing a 1951 case in which the Red Cross removed a suit against it from state to federal court based not on any independent jurisdictional grant implicit in the "sue and be sued" provision, but rather on party diversity. See Brief for Respondents 29 (citing *Patterson* v. *American National Red Cross,* 101 F. Supp. 655 (SD Fla. 1951)). However, the Red Cross's failure in one 40-year-old case to base its removal petition on the theory it advances today adds nothing to respondents' attack on the Red Cross's current interpretation.

[15] The dissent adopts and refines respondents' argument, see Brief for Respondents 16, that the 1947 amendment's parallel treatment of federal and state courts counsels against reading that amendment as conferring jurisdiction, see *post,* at 267–268. The short answer is that *D'Oench, Duhme* forecloses the argument, since the charter language we held to confer federal jurisdiction in that case made exactly the same parallel mention of federal and state courts. But going beyond that, the reference to state as well as federal courts presumably was included lest a mention of federal courts alone (in order to grant jurisdiction to them) be taken as motivated by an intent to confer exclusive federal jurisdiction. Moreover, the Red Cross Charter's "sue and be sued" provision, like its counterparts

## V

Our holding leaves the jurisdiction of the federal courts well within Article III's limits. As long ago as *Osborn*, this Court held that Article III's "arising under" jurisdiction is broad enough to authorize Congress to confer federal-court jurisdiction over actions involving federally chartered corporations. See 9 Wheat., at 823–828.[16] We have consistently reaffirmed the breadth of that holding. See *Pacific R. Removal Cases*, 115 U. S., at 11–14; *In re Dunn*, 212 U. S. 374, 383–384 (1909); *Bankers Trust*, 241 U. S., at 305–306; *Puerto*

construed in *Osborn* and *D'Oench, Duhme,* confers both capacity to sue and jurisdiction. While capacity to sue in both federal and state courts was already clearly established before the 1947 amendment, it may have been feared that the addition of the word "Federal" to confer federal jurisdiction would be misread to limit the Red Cross's capacity to sue in state courts, if it were not reaffirmed by explicit inclusion of the word "State."

It is the dissent's conclusion that the 1947 amendment was meant to "eliminat[e] the possibility that the language 'courts of law and equity within the jurisdiction of the United States' that was contained in the original charter might be read to limit the grant of capacity to sue in federal court," *post,* at 275 (emphasis and citation omitted); that is difficult to justify. Such a motivation is nowhere even hinted at in the Advisory Report, the document both Houses of Congress acknowledged as the source for the amendment, see *supra,* at 261 (quoting congressional reports); indeed, the relevant part of the Advisory Report does not even mention state courts, see Advisory Report 35–36, reprinted at App. to Brief for Appellants in No. 90–1873, at 132–133. It is hardly a "reasonable construction," *post,* at 275, of the amendment to view it as granting something the Advisory Report never requested. While the dissent notes one of Senator George's comments supporting its hypothesis, it ignores the other, which explicitly notes a federal jurisdiction-conferring motivation behind the amendment. See *supra,* at 261, n. 13.

Neither party reads the 1947 amendment to clarify the Red Cross's capacity to sue in state courts, and, as there is no evidence of such an intent, we do not embrace that reading here.

[16] Again, it should be pointed out that statutory jurisdiction in this case is not based on the Red Cross's federal incorporation, but rather upon a specific statutory grant. In contrast, the constitutional question asks whether Article III's provision for federal jurisdiction over cases "arising under federal law" is sufficiently broad to allow that grant.

*Rico* v. *Russell & Co.*, 288 U. S. 476, 485 (1933); *Verlinden,* 461 U. S., at 492. We would be loath to repudiate such a longstanding and settled rule, on which Congress has surely been entitled to rely, cf. *Pennsylvania* v. *Union Gas Co.*, 491 U. S. 1, 34–35 (1989) (SCALIA, J., concurring in part and dissenting in part), and this case gives us no reason to contemplate overruling it.

## VI

The judgment of the Court of Appeals is reversed, and the case is remanded for proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE SCALIA, with whom THE CHIEF JUSTICE, JUSTICE O'CONNOR, and JUSTICE KENNEDY join, dissenting.

The Court today concludes that whenever a statute granting a federally chartered corporation the "power to sue and be sued" specifically mentions the federal courts (as opposed to merely embracing them within general language), the law will be deemed not only to confer on the corporation the capacity to bring and suffer suit (which is all that the words say), but also to confer on federal district courts *jurisdiction* over any and all controversies to which that corporation is a party. This wonderland of linguistic confusion—in which words are sometimes read to mean only what they say and other times read also to mean what they do not say—is based on the erroneous premise that our cases in this area establish a "magic words" jurisprudence that departs from ordinary rules of English usage. In fact, our cases simply reflect the fact that the natural reading of *some* "sue and be sued" clauses is that they confer both capacity and jurisdiction. Since the natural reading of the Red Cross Charter is that it confers only capacity, I respectfully dissent.

## I

Section 2 of the Red Cross Charter, 36 U. S. C. § 2, sets forth the various powers of the corporation, such as the

power "to have and to hold . . . real and personal estate"; "to adopt a seal"; "to ordain and establish bylaws and regulations"; and to "do all such acts and things as may be necessary to . . . promote [its] purposes."[1] The second item on this list is "the power to sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States." *Ibid.* The presence of this language amidst a list of more or less ordinary corporate powers confirms what the words themselves suggest: It merely establishes that the Red Cross is a juridical person which may be party to a lawsuit in an American court, and that the Red Cross—despite its status as a federally chartered corporation—does not share the Government's general immunity from suit. Cf. Fed. Rule Civ. Proc. 17(b) ("The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized"); 4 Thompson on Corporations

---

[1] Section 2, as amended, provides in its entirety:

"The name of this corporation shall be 'The American National Red Cross', and by that name it shall have perpetual succession, with the power to sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States; to have and to hold such real and personal estate as shall be deemed advisable and to dispose of the same, to accept gifts, devises, and bequests of real and personal estate for the purposes of this corporation hereinafter set forth; to adopt a seal and the same to alter and destroy at pleasure; and to have the right to have and to use, in carrying out its purposes hereinafter designated, as an emblem and badge, a Greek red cross on a white ground, as the same has been described in the treaties of Geneva, August twenty-second, eighteen hundred and sixty-four and July twenty-seventh, nineteen hundred and twenty-nine, and adopted by the several nations acceding thereto; to ordain and establish bylaws and regulations not inconsistent with the laws of the United States of America or any State thereof, and generally to do all such acts and things as may be necessary to carry into effect the provisions of sections 1, 2 to 6, 8, and 9 of this title and promote the purposes of said organization; and the corporation created is designated as the organization which is authorized to act in matters of relief under said treaties. In accordance with the said treaties, the delivery of the brassard allowed for individuals neutralized in time of war shall be left to military authority." 36 U. S. C. §2.

§ 3161, p. 975 (3d ed. 1927) ("[The power to sue and be sued] is expressly conferred in practically every incorporating act"); *Loeffler* v. *Frank*, 486 U. S. 549, 554–557 (1988) ("sue and be sued" clause waives sovereign immunity).

It is beyond question that nothing in the language of this provision suggests that it has anything to do with regulating the jurisdiction of the federal courts. The grant of corporate power to sue and be sued in no way implies a grant of federal-court jurisdiction; it merely places the corporation on the same footing as a natural person, who must look elsewhere to establish grounds for getting his case into court. Words conferring *authority* upon a *corporation* are a most illogical means of conferring *jurisdiction* upon a *court*, and would not normally be understood that way. Moreover, it would be extraordinary to confer a new subject-matter jurisdiction upon "federal courts" in general, rather than upon a particular federal court or courts.

The Court apparently believes, see *ante*, at 256, n. 8, that the language of § 2 is functionally equivalent to a specific reference to the district courts, since no other court could reasonably have been intended to be the recipient of the jurisdictional grant. Perhaps so, but applying that intuition requires such a random butchering of the text that it is much more reasonable to assume that *no* court was the intended recipient. The Red Cross is clearly granted the *capacity* to sue and be sued in *all* federal courts, so that it could appear, for example, as a party in a third-party action in the Court of International Trade, see 28 U. S. C. § 1583, and in an action before the United States Claims Court, see Claims Court Rule 14(a) (Mar. 15, 1991). There is simply no textual basis, and no legal basis except legal intuition, for saying that it must *in addition* establish an independent basis of jurisdiction to proceed in those courts, though it does *not* in the district courts.

In fact, the language of this provision not only does not distinguish among federal courts, it also does not treat fed-

eral courts differently from state courts; the Red Cross is granted the "power" to sue in both. This parallel treatment of state and federal courts even further undermines a jurisdictional reading of the statute, since the provision cannot reasonably be read as allowing the Red Cross to enter a state court without establishing the independent basis of jurisdiction appropriate under state law. Such a reading would present serious constitutional questions. Cf. *Brown* v. *Gerdes*, 321 U. S. 178, 188 (1944) (Frankfurter, J., concurring); *Howlett* v. *Rose*, 496 U. S. 356, 372 (1990); *Herb* v. *Pitcairn*, 324 U. S. 117, 120–121 (1945); *Minneapolis & St. Louis R. Co.* v. *Bombolis*, 241 U. S. 211, 222–223 (1916); but cf. Sandalow, Henry v. Mississippi and the Adequate State Ground: Proposals for a Revised Doctrine, 1965 S. Ct. Rev. 187, 207, n. 84. Since the language of the Red Cross Charter cannot fairly be read to create federal jurisdiction but not state jurisdiction, we should not construe it as creating either. *Edward J. DeBartolo Corp.* v. *NLRB*, 463 U. S. 147, 157 (1983); *NLRB* v. *Catholic Bishop of Chicago*, 440 U. S. 490, 500–501 (1979).

I therefore conclude—indeed, I do not think it seriously contestable—that the natural reading of the "sue and be sued" clause of 36 U. S. C. § 2 confers upon the Red Cross only the *capacity* to "sue and be sued" in state and federal courts; it does not confer jurisdiction upon any court, state or federal.

## II

I do not understand the Court to disagree with my analysis of the ordinary meaning of the statutory language. Its theory is that, regardless of ordinary meaning, our cases have created what might be termed a "phrase of art," whereby a "sue and be sued" clause confers federal jurisdiction "if, but only if, it specifically mentions the federal courts." *Ante*, at 255. Thus, while the uninitiated would consider the phrase "sue and be sued in any court in the United States" to mean the same thing as "sue and be sued

in any court, state or federal," the Court believes that our cases have established the latter (but not the former) as a shorthand for "sue and be sued in any court, state or federal, *and the federal district courts shall have jurisdiction over any such action.*" Congress is assumed to have used this cleverly crafted code in enacting the charter provision at issue here. *Ante,* at 251–252. In my view, our cases do not establish the cryptology the Court attributes to them. Rather, the four prior cases in which we have considered the jurisdictional implications of "sue and be sued" clauses are best understood as simply applications of conventional rules of statutory construction.

In *Bank of the United States* v. *Deveaux,* 5 Cranch 61 (1809), we held that a provision of the Act establishing the first Bank of the United States which stated that the Bank was "made able and capable in law . . . to sue and be sued . . . in courts of record, or any other place whatsoever," 1 Stat. 192, did not confer jurisdiction on the federal courts to adjudicate suits brought by the Bank. Construing the statutory terms in accordance with their ordinary meaning, we concluded (as I conclude with respect to the Red Cross Charter) that the provision merely gave "a *capacity* to the corporation to appear, as a corporation, in any court which would, by law, have cognisance of the cause, if brought by individuals." 5 Cranch, at 85–86 (emphasis added). We expressly noted (as I have in this case) that the Act's undifferentiated mention of all courts compelled the conclusion that the provision was not jurisdictional: *"If jurisdiction is given by this clause to the federal courts, it is equally given to all courts having original jurisdiction, and for all sums however small they may be."* *Id.,* at 86 (emphasis added). That statement is immediately followed by contrasting this provision with another section of the Act which provided that certain actions against the directors of the Bank "may . . . be brought . . . in any court of record of the United States, or of either of them." 1 Stat. 194. *That* provision, we said,

"expressly authorizes the bringing of that action in the federal or state courts," which "evinces the opinion of congress, that the right to sue does not imply a right to sue in the courts of the union, unless it be expressed." 5 Cranch, at 86. It is clear, I think, that the reason the Court thought the right to have been "expressed" under the directors-suit provision, but not "expressed" under the provision before it, was *not* that the former happened to mention courts "of the United States." For that would have provided no contrast to the argument against jurisdiction (italicized above) that the Court had just made. Reference to suits "in any court of record of the United States, or of either of them," is no less universal in its operative scope than reference to suits "in courts of record," and hence is subject to the *same* objection (to which the Court was presumably giving a contrasting example) that jurisdiction was indiscriminately conferred on all courts of original jurisdiction and for any and all amounts.

*Deveaux* establishes not, as the Court claims, the weird principle that mention of the federal courts *in a "sue and be sued" clause* confers jurisdiction; but rather, the quite different (and quite reasonable) proposition that mention of the federal courts in a provision *allowing a particular cause of action to be brought* does so. The contrast between the "sue and be sued" clause and the provision authorizing certain suits against the directors lay, not in the mere substitution of one broad phrase for another, but in the fact that the latter provision, by authorizing particular actions to be *brought* in federal court, could not reasonably be read *not* to confer jurisdiction. A provision merely conferring a general *capacity* to bring actions, however, cannot reasonably be read to *confer* jurisdiction.[2]

---

[2] The Court believes that *Deveaux*'s statement that "the right to sue does not imply the right to sue in the courts of the union *unless it be expressed*," *Bank of United States* v. *Deveaux*, 5 Cranch 61, 86 (1809) (emphasis added), is somehow inconsistent with my analysis. *Ante*, at

This reading of *Deveaux* is fully consistent with our subsequent decision in *Osborn* v. *Bank of United States*, 9 Wheat. 738 (1824), which construed the "sue and be sued" clause of the second Bank's charter as conferring jurisdiction on federal circuit courts. The second charter provided that the Bank was "made able and capable, in law . . . to sue and be sued . . . in all state courts having competent jurisdiction, and in any circuit court of the United States," 3 Stat. 269. By granting the Bank power to sue, not in all courts generally (as in *Deveaux*), but in *particular* federal courts, this suggested a grant of jurisdiction rather than merely of capacity to sue. And that suggestion was strongly confirmed by the fact that the Bank was empowered to sue in state courts "having competent jurisdiction," but in federal circuit courts *simpliciter.* If the statute had jurisdiction in mind as to the one, it must as to the other as well. Our opinion in *Osborn* did not invoke the "magic words" approach adopted by the Court today, but concluded that the charter language "admit[ted] of but one interpretation" and could not "be made plainer by explanation." 9 Wheat., at 817.

In distinguishing *Deveaux*, *Osborn* noted, and apparently misunderstood as the Court today does, that case's contrast between the "express grant of jurisdiction to the federal courts" over suits against directors and the "general words" of the "sue and be sued" clause, "which [did] not mention those courts." 9 Wheat., at 818. All it concluded from that, however, was that *Deveaux* established that "a general capacity in the bank to sue, without mentioning the courts of the Union, may not give a right to sue in those courts." 9 Wheat., at 818. There does not logically follow from that the rule which the Court announces today: that *any* grant of a general capacity to sue *with* mention of federal courts will

255, n. 6. Quite the opposite is true: The Court's simple statement that the grant of jurisdiction must "be expressed" is obviously a call, not to reach for the cryptograph, but to discern the plain meaning of the statutory language.

suffice to confer jurisdiction. The Court's reading of this language from *Osborn* as giving talismanic significance to any "mention" of federal courts is simply inconsistent with the fact that *Osborn* (like *Deveaux*) did not purport to confer on the words of the clause any meaning other than that suggested by their natural import.

This reading of *Deveaux* and *Osborn* is confirmed by our later decision in *Bankers Trust Co.* v. *Texas & Pacific R. Co.,* 241 U. S. 295 (1916). There we held it to be "plain" that a railroad charter provision stating that the corporation "shall be able to sue and be sued . . . in all courts of law and equity within the United States," 16 Stat. 574, did not confer jurisdiction on any court. 241 U. S., at 303. Had our earlier cases stood for the "magic words" rule adopted by the Court today, we could have reached that conclusion simply by noting that the clause at issue did not contain a specific reference to the federal courts. That is not, however, what we did. Indeed, the absence of such specific reference *was not even mentioned* in the opinion. See *id.,* at 303–305. Instead, as before, we sought to determine the sense of the provision by considering the ordinary meaning of its language in context. We concluded that "Congress would have expressed [a] purpose [to confer jurisdiction] in altogether different words" than these, *id.,* at 303, which had "the same generality and *natural import* as did those in the earlier bank act [in *Deveaux*]," *id.,* at 304 (emphasis added). Considered in their context of a listing of corporate powers, these words established that

> "Congress was not then concerned with the jurisdiction of courts but with the faculties and powers of the corporation which it was creating; and evidently all that was intended was to render this corporation capable of suing and being sued by its corporate name *in any court of law or equity—Federal, state, or territorial*—whose jurisdiction as otherwise competently defined was adequate to the occasion." *Id.,* at 303 (emphasis added).

That paraphrasing of the railroad charter, in terms that would spell jurisdiction under the key the Court adopts today, belies any notion that *Bankers Trust* was using the same code book.[3]

The fourth and final case relied upon by the Court is *D'Oench, Duhme & Co.* v. *FDIC,* 315 U. S. 447 (1942). In that case, we granted certiorari to consider whether a federal court in a nondiversity action must apply the conflict-of-laws rules of the forum State. We ultimately did not address that question (because we concluded that the rule of decision was provided by federal, rather than state, law, see *id.,* at 456), but in the course of setting forth the question presented, we noted that, as all parties had conceded, the jurisdiction of the federal district court did not rest on diversity:

> "Respondent, a federal corporation, brings this suit under an Act of Congress authorizing it to sue or be sued 'in any court of law or equity, State or Federal.' Sec. 12 B, Federal Reserve Act; 12 U. S. C. § 264(j).[2]
>
> "[2] That subdivision of the Act further provides: 'All suits of a civil nature at common law or in equity to which the Corporation shall be a party shall be deemed to arise under the laws of the United States . . . .'"

*Id.,* at 455–456.

The Court relies heavily on this case, which it views as holding that a statute granting a corporation the power " "to sue or be sued "in any court of law or equity, State or Federal" " " establishes jurisdiction in federal district courts. *Ante,* at 254–255. Even if the quoted language did say that,

---

[3] The Court's protest, *ante,* at 257, n. 9, that its interpretive rule should not be applied to *Bankers Trust*'s paraphrase of the railroad charter at issue in that case is a frank confession that that rule has no relation to ordinary principles for discerning meaning in the English language—*i. e.,* it has no relation to the very principles that we have consistently purported to apply in this area.

it would be remarkable to attribute such great significance to a passing comment on a conceded point. But in my view it does not say that anyway, since the footnote must be read together with the text as explaining the single basis of jurisdiction (rather than, as the Court would have it, explaining two separate bases of jurisdiction in a case where even the explanation of one is *obiter*). The language quoted in the footnote is not, as the Court says, from "another part of the same statute," *ante*, at 254, but is the continuation of the provision quoted in the text, see 12 U. S. C. § 264(j) (1940 ed.). And the complaint in *D'Oench, Duhme* expressly predicated jurisdiction on the fact that the action was one "aris[ing] under the laws of the United States." Tr. of Record in *D'Oench, Duhme & Co.* v. *Federal Deposit Ins. Corp.*, O. T. 1941, No. 206, p. 3. The language in this case is a thin reed upon which to rest abandonment of the rudimentary principle (followed even in other "sue and be sued" cases) that a statute should be given the meaning suggested by the "natural import" of its terms. *Bankers Trust, supra,* at 304.

### III

Finally, the Court argues that a jurisdictional reading of the Red Cross Charter is required by the canon of construction that an amendment to a statute ordinarily should not be read as having no effect. *Ante,* at 263. The original "sue and be sued" clause in the Red Cross Charter did not contain the phrase "State or Federal," and the Court argues that its reading—which gives decisive weight to that addition—is therefore strongly to be preferred. *Ibid.* I do not agree. Even if it were the case that my reading of the clause rendered this phrase superfluous, I would consider that a small price to pay for adhering to the competing (and more important) canon that statutory language should be construed in accordance with its ordinary meaning. And it would seem particularly appropriate to run the risk of surplusage here, since the amendment in question was one of a number of

technical changes in a comprehensive revision. Ch. 50, § 3, 61 Stat. 80, 81 (1947).

But in any event, a natural-meaning construction of the "sue and be sued" clause does not render the 1947 amendment superfluous. The addition of the words "State or Federal" eliminates the possibility that the language "courts of law and equity *within the jurisdiction* of the United States" that was contained in the original charter, see ch. 23, § 2, 33 Stat. 600 (emphasis added), might be read to limit the grant of capacity to sue in *federal court.* State courts are not within the "jurisdiction" of the United States unless "jurisdiction" is taken in the relatively rare sense of referring to territory rather than power. The addition of the words "State or Federal" removes this ambiguity.

The Court rejects this argument on the ground that there is "no evidence of such an intent." *Ante,* at 264, n. 15. The best answer to that assertion is that it is irrelevant: To satisfy the canon the Court has invoked, it is enough that there be a reasonable construction of the old and amended statutes that would explain why the amendment is not superfluous. Another answer to the assertion is that it is wrong. As the Court notes elsewhere in its opinion, *ante,* at 261, n. 13, one of the only comments made by a Member of Congress on this amendment was Senator George's statement, during the hearings, that the purpose of the provision was to confirm the Red Cross' capacity to sue in *state* court. See Hearings on S. 591 before the Senate Committee on Foreign Relations, 80th Cong., 1st Sess., 11 (1947).[4]

---

[4] The Court points out that Senator George also stated, in response to a question whether foreign courts should be covered by the amendment, that the purpose of the bill was "'to give the jurisdiction in State courts and Federal courts, and I think we had better leave it there.'" *Ante,* at 261, n. 13. Rather than concluding (as seems obvious) that Senator George was speaking with imprecision in using the phrase "give the jurisdiction," the Court draws the far less likely conclusion that Senator George was flatly contradicting himself in what he said only a few minutes later. *Ibid.*

\* \* \*

Because the Red Cross Charter contains no language suggesting a grant of jurisdiction, I conclude that it grants only the capacity to "sue or be sued" in a state or federal court of appropriate jurisdiction. In light of this conclusion, I find it unnecessary to reach the constitutional question addressed in Part V of the Court's opinion. I would affirm the judgment of the Court of Appeals.