United States Court of Appeals,

Eleventh Circuit.

No. 94-8607.

Eddie BARTELS, individually and on behalf of all others similarly situated, Alethia Pinkney, individually and on behalf of all others similarly situated, Shirley Travis, individually and on behalf of all others similarly situated, Iris Huss, individually and on behalf of all others similarly situated, Sharon Davis, individually and on behalf of all others similarly situated, Leonie Smart, individually and on behalf of all others similarly situated, Mary L. Manley, individually and on behalf of all others similarly situated, Doretha Young, individually and on behalf of all others similarly situated, Ruby C. Carr, individually and on behalf of all others similarly situated, Alfreda C. Bantum, individually and on behalf of all others similarly situated, Vera Borson, individually and on behalf of all others similarly situated, Plaintiffs-Appellants,

v.

ALABAMA COMMERCIAL COLLEGE, INC., dba Riley Training Institute of Savannah, Waycross and Brunswick, Georgia, et al., Defendants-Appellees.

June 13, 1995.

Appeal from the United States District Court For the Southern District of Georgia. (No. CV293-162), Anthony A. Alaimo, Judge.

Before HATCHETT, Circuit Judge, HENDERSON, Senior Circuit Judge, and YOUNG[*], Senior District Judge.

HATCHETT, Circuit Judge:

Appellants, Eddie Bartels and other former students of Alabama Commercial College, filed this action seeking rescission of their student loan contracts and other relief. The district court dismissed their amended complaint for lack of subject matter jurisdiction. We reverse.

FACTS

Appellants, members of a putative class, are former students

_____

[*]Honorable George C. Young, Senior U.S. District Judge for the Middle District of Florida, sitting by designation.

of the now defunct Alabama Commercial College that did business as Riley Training Institute of Savannah, Waycross, and Brunswick, Georgia (the school). The appellees either reinsured, guaranteed, or purchased student loan contracts that appellants had signed. The appellees are: the Secretary of the United States Department of Education, Richard Riley (the Secretary); the Student Loan Marketing Association (Sallie Mae); the Higher Education Assistance Foundation (HEAF); and the Georgia Higher Education Assistance Corporation (GHEAC). This lawsuit is based upon the appellants' contention that the school fraudulently induced them to enroll in the school and to enter into federally guaranteed student loan contracts. According to the appellants, the school then failed to provide any worthwhile education or job placement. Thus, upon leaving the school, appellants were left with several thousand dollars in student loan debt. Through the use of various theories of vicarious liability, the appellants seek to interpose state common law fraud and contract claims that they may assert against the school, as defenses to any collection efforts on the part of the appellees.

Appellants claim the Guaranteed Student Loan (GSL) program that Congress authorized through enactment of Part B of Title IV of the Higher Education Act of 1965 (HEA), 79 Stat. 1219, as amended, 20 U.S.C.A. § 1070 *et seq.,* financed their attendance at the school.[1] The GSL program was designed to encourage private lenders to provide educational loans to students. In order to further this

---

[1]The GSL program has been renamed the Federal Family Education Loan (FFEL) program. *See* Pub.L. No. 102-325, § 411(a)(1), 106 Stat. 510 (1992).

objective, the federal government provides private commercial lenders with a guaranty that a student's educational loan will be repaid even if the student defaults.

Under a typical GSL program transaction, a private lender issues a loan directly to the student. The institution of higher education ordinarily is not a party to the loan agreement and has no role in the transaction other than to provide the lender with a statement of the student's estimated cost of attendance and financial assistance needs. The federal government, moreover, does not directly guarantee the loan of the private lender. Rather, a guarantor, typically a state or private nonprofit agency such as HEAF and GHEAC, provides the private lender with a guaranty that the loan will be repaid even if the student defaults. These guarantors, in turn, enter into reinsurance agreements with the Department of Education under which the Department of Education reinsures up to 100 percent of the guarantors' losses in paying defaulted claims. Thus, in the event a student defaults, the guarantor reimburses the private lender of the loan, takes assignment of the loan from the lender, and then seeks reimbursement from the Department of Education.

The appellants' complaint, as amended, sought the cancellation of their GSL program indebtedness, an order enjoining further collection efforts against them on the part of the appellees, and the return of all GSL program payments previously made. Count I alleged state law fraud on the part of the school as a result of its misrepresentations regarding the quality of training the students would receive and the school's job placement assistance

for students.  GHEAC, HEAF and Sallie Mae were also named in this count based on, among other grounds, the allegation that the lenders stood in an "origination relationship" with the school, that the school acted as an agent for the lenders in procuring the loans, and that GHEAC, HEAF and Sallie Mae were assignees of the loan contracts.[2]  Count II alleged breach of contract on the part of the school, the Secretary, GHEAC, HEAF and Sallie Mae.  That count alleged that the school breached its enrollment contract when it failed to provide promised educational training and job placement.  Count Two's claims against GHEAC, HEAF and Sallie Mae were based on the same allegations and relationships stated in Count One.  The breach of contract claim against the Secretary was premised on, among other things, the assertion that the lenders stood in an "origination relationship" with the school, that the Secretary is an assignee of loan agreements between the appellants and the lenders, and that the promissory notes for those loans are implied to have included the FTC Holder Rule clause.[3]  Count III

---

[2]An "origination relationship" between a school and a lender arises when the lender delegates to the school substantial loan-making functions ordinarily performed by the lender.  34 C.F.R. § 682.200.  The Secretary of Education has adopted an informal policy of not requiring guarantors to make collection efforts on defaulted loans when an origination relationship existed between the school and the lender.  The policy is apparently motivated by the Secretary's desire to ensure that lenders perform the requisite due diligence prior to making a loan;  and in the absence of such due diligence, lenders should not be able to avail themselves of the benefit of the federal guaranty.  See 34 C.F.R. § 682.500(c)(1).

[3]As part of its effort to afford relief to students who obtained loans after enrolling in questionable schools, Congress directed the Department of Education to develop a common loan application form and promissory note to be used by all participants in the GSL program.  See 20 U.S.C.A. § 1082(m)(1) (Supp.1995).  This form, which went into effect in 1994,

alleged a violation of Georgia's Uniform Deceptive Trade Practices Act, O.C.G.A. §§ 10-1-370 *et seq.,* on the part of all the appellees based on, among other grounds, their failure to ensure that the appellants' student loan contracts contained the FTC Holder Rule, and failure to comply with the rule. Count Three further alleged that the appellants' failure to comply with the Higher Education Act constituted unfair and deceptive trade practices under Georgia law. Count IV alleged an *ex delicto* breach of contract on the part of the school, HEAF and GHEAC due to their failure to ensure that the appellants' student loan contracts contained the FTC Holder Rule.

In a section of their amended complaint entitled "Prayer for Relief," the appellants presented a more particularized assertion of their bases for relief than was articulated in the counts. They requested the district court, pursuant to Counts I and II, to declare all loan contracts they signed unenforceable by the Secretary, HEAF, GHEAC and Sallie Mae because they stood in an origination relationship with the lenders and the school. The appellants also sought injunctive relief under all four counts to prevent the Secretary, HEAF, GHEAC and Sallie Mae from attempting to collect on their student loans. That section of the complaint also sought injunctive relief under all four Counts to prevent the Secretary, HEAF, GHEAC and Sallie Mae from transferring or assigning the loans during the pendency of this litigation.

---

incorporates a Federal Trade Commission (FTC) clause (the FTC Holder Rule). As applied to this case, the rule would allow a student to use consumer claims and defenses against a school as defenses to bank loans. See 16 C.F.R. § 433.2(a).

PROCEDURAL HISTORY

The appellants filed their complaint in United States District Court for the Southern District of Georgia on August 17, 1993. On October 4, 1993, GHEAC filed a motion to dismiss the plaintiffs' complaint pursuant to rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The appellants filed an amended complaint on October 12, 1993. On November 22, 1993, the Secretary filed a motion to dismiss pursuant to rules 12(b)(1) and 12(b)(6). On November 23, 1993, HEAF filed a motion to dismiss pursuant to rule 12(b)(6). On November 24, 1993, Sallie Mae filed a motion to dismiss pursuant to rules 12(b)(1) and 12(b)(6). The district court entered a default judgment against the school on December 9, 1993.

On March 24, 1994, the district court dismissed the complaint for lack of subject matter jurisdiction. The district court found federal subject matter jurisdiction lacking because the appellants failed to allege that their state law claims necessarily turned on some construction of federal law. The district court believed that the complaint presented only three arguable federal "ingredients": the "origination relationship" between the school and the lenders mentioned in Counts I and II; the FTC Holder Rule mentioned in all four counts; and the Higher Education Act mentioned in Count III. The court believed that the best argument for the presence of federal question jurisdiction was found in the appellants' assertion of an "origination relationship" between the school and the lenders. The court concluded, however, that the presence of the origination issue was not strong enough to support federal

question jurisdiction.

The court also found that the presence of the FTC Holder Rule in Count III, the Georgia deceptive trade practices count, did not merit federal question jurisdiction because state law governs whether the violation of the FTC rule, or its omission from the students' loan contracts, constituted a violation of Georgia law. The court also found that Count IV, the *ex delicto* contract breach count, did not confer federal question jurisdiction because the issue of whether the appellees' failure to ensure placement of the FTC Holder Rule in the loan agreements constituted a breach of the contract was a question of state law. Alternatively, the court found that the FTC Act did not provide a private cause of action. With respect to the presence of the HEA in Count III and in the appellants' prayer for relief, the court found that the appellants' ability to succeed on the four counts was not sufficiently tied to the assertion that the appellees' action violated the HEA. Therefore, the HEA allegation did not create federal question jurisdiction.

Appellants filed a motion for reconsideration on April 4, 1994, that more fully developed their argument that the HEA contained an independent grant of federal question jurisdiction over non-tort claims for monetary relief against the Secretary. Appellants relied on 20 U.S.C. § 1082(a)(2)'s "sue and be sued" clause as support for their argument. On April 19, 1994, the Secretary filed a response in opposition to the appellants' motion for reconsideration. The Secretary agreed with the appellants that section 1082(a)(2)'s "sue and be sued" clause constituted an

independent grant of federal court jurisdiction.  The Secretary argued, however, that the district court's order dismissing the complaint could be upheld on the alternative ground of failure to state a claim upon which relief could be granted.  In denying the motion for reconsideration, the district court concluded that the appellants had not asserted any claims arising under the HEA in any of the four counts of their complaint.  Appellants filed a timely notice of appeal.

## ISSUE

The sole issue in this appeal is whether the district court err when it ruled that it did not have subject matter jurisdiction under the "sue and be sued" provision of section 1082(a)(2) of the HEA.

## CONTENTIONS

The appellants contend that jurisdiction was proper because the case involves the Secretary's administration of the GSL program and 20 U.S.C. § 1082(a)(2)'s "sue and be sued" clause confers jurisdiction through its specific reference to the federal courts. Appellants argue, moreover, that every action that the Department of Education engages in arises under the federal statutes that created it and its programs.  Therefore, a suit against the Department of Education necessarily arises under the laws of the United States.

The Secretary and HEAF agree with the appellants' argument that jurisdiction was proper because the case involves the Secretary's administration of the GSL program.  They invite us to uphold the district court's dismissal on the alternative ground

that the appellants have failed to state a cause of action that entitles them to relief.  Sallie Mae and GHEAC assert that the appellants did not make a jurisdictional allegation under section 1082.  Therefore, they did not comply with the well pleaded complaint rule, and, in any event, section 1082(a)(2)'s "sue and be sued" clause is limited to claims arising under the HEA.

## DISCUSSION

The federal question jurisdiction of the district court is a question of law subject to *de novo* review.  *United States v. Perez,* 956 F.2d 1098, 1101 (11th Cir.1992).  The Supreme Court has recently addressed the jurisdictional implications of "sue and be sued" clauses in *American National Red Cross v. S.G.,* --- U.S. ---- , 112 S.Ct. 2465, 120 L.Ed.2d 201 (1992).  In that case, a husband and wife, who claimed that the wife had contracted acquired immune deficiency syndrome (AIDS) from a transfusion of contaminated blood the Red Cross supplied, filed a state law tort action against the Red Cross in New Hampshire state court.  The Red Cross removed the action to federal district court on the ground that its charter contained a "sue and be sued" clause that conferred original federal jurisdiction over suits involving the Red Cross.[4]  The district court denied a motion to remand the case to state court on the ground that the "sue and be sued" provision conferred original federal jurisdiction.  On interlocutory appeal, the United States Court of Appeals for the First Circuit concluded that the "sue and

---

[4]The American National Red Cross charter authorizes the organization to "sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States." 36 U.S.C.A. § 2.

be sued" provision did not confer original federal jurisdiction, and reversed the district court. The Supreme Court reversed the court of appeals's decision. The Court drew a distinction between "sue and be sued" clauses that specifically referenced the federal courts and those that do not. Relying on *Osborn v. Bank of the United States,* 9 Wheat. 738, 6 L.Ed. 204 (1824) and *D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), the Court held that a "sue and be sued provision may be read to confer federal court jurisdiction if, but only if, it specifically mentions the federal courts." *American National Red Cross,* --- U.S. at ----, 112 S.Ct. at 2471.

Section 432(a)(2) of the HEA provides, in relevant part:

> In the performance of, and with respect to, the functions, powers, and duties, vested in him by this part, the Secretary may—
>
> ....
>
> (2) *sue and be sued* in any court of record of a State having general jurisdiction or *in any district court of the United States,* and such district courts shall have jurisdiction of civil actions arising under this part without regard to the amount in controversy....

20 U.S.C.A. § 1082(a) (emphasis added). Section 1082(a)(2), as was the case with the congressional charter involved in *American National Red Cross,* "specifically mentions the federal courts." *American National Red Cross,* --- U.S. at ----, 112 S.Ct. at 2471. Therefore, the section's "sue and be sued" provision confers federal court jurisdiction over actions involving "the performance of" the Secretary's duties under the GSL program or the Secretary's "functions, powers, and duties" under that program. *See* 20 U.S.C.A. § 1082(a)(2).

The district court dismissed the appellants' complaint on the ground that they had not demonstrated that their claims arose under the HEA. In interpreting section 1082(a)(2), the district court emphasized the section's "arising under this part" language to the exclusion of the "sue and be sued" language.[5] The district court's reliance on the "arising under this part" language of section 1082(a)(2)'s "sue and be sued" provision led it to review the appellants' amended complaint for compliance with the well pleaded complaint rule applicable to "arising under" jurisdiction based on 28 U.S.C. § 1331. *See Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 494, 103 S.Ct. 1962, 1971, 76 L.Ed.2d 81 (1983) (noting that the well pleaded complaint rule only applies to statutory matters arising under cases). Although the district court properly applied the law applicable to "arising under" jurisdiction, we must reverse its dismissal of the amended complaint because the first clause of section 1082's "sue and be sued" provision, through its specific mention of the federal courts, constitutes a separate and independent jurisdictional grant. *See American National Red Cross,* --- U.S. at ----, 112 S.Ct. at 2471.

The first clause of section 1082(a)(2)'s "sue and be sued" provision allows the Secretary to "sue and be sued ... in any district court of the United States." We believe this first clause of section 1082(a)(2)'s "sue and be sued" provision provides the federal courts with an independent jurisdictional grant over cases

---

[5]Section 1082(a)(2)'s "this part" language refers to Part (b) of Title IV of the HEA; the GSL program is authorized under that portion of the HEA. *See* 79 Stat. 1219.

involving the Secretary's administration of the GSL program. The second clause of the provision provides: "and such district courts shall have jurisdiction of civil actions arising under this part without regard to the amount in controversy." 20 U.S.C.A. § 1082(a)(2). The second clause merely clarifies that if the district court exercises "arising under" jurisdiction over claims involving the GSL program, it must do so without regard to the amount in controversy. We do not believe the section's "arising under this part" language can be properly read as a limitation on the first clause of the "sue and be sued" provision.

Section 1082(a)(2) was originally enacted in 1965. *See* Pub L. 89-329, Title 4, section 432 (Nov. 8, 1965), 79 Stat. 1246, 1247. At that time, 28 U.S.C. § 1331's federal question jurisdiction provision also contained an amount in controversy requirement. *See* 13B, Charles A. Wright, et al., Federal Practice and Procedure § 3561.1 at 5-13 (2d ed. 1984). Therefore, if Congress desired to provide the district courts with jurisdiction over cases arising under federal law without regard to an amount in controversy, Congress had to do so specifically in the statute. *See* 13B, Charles A. Wright, et al., Federal Practice and Procedure § 3561.1 at 5. Congress, of course, has since eliminated the amount in controversy requirement for cases arising under federal law. *See* 28 U.S.C. § 1331. However, in 1965, when Congress stated in section 1082(a)(2) that the "district court shall have jurisdiction of civil actions arising under this part without regard to the amount in controversy," Congress was merely instructing the district courts that cases arising under the GSL program need not

comply with section 1331's amount in controversy requirement. Additionally, we do not believe that the "arising under this part" language of section 1082(a)(2) is a limitation on the "sue and be sued" clause. In *American National Red Cross,* the Supreme Court recognized that its decision in *D'Oench, Duhme,* involving the Charter of the Federal Deposit Insurance Corporation, had also contained a separate jurisdictional provision in addition to a "sue and be sued" clause. In *D'Oench Duhme,* as in this case, jurisdictional overlap existed between the separate jurisdictional provision and the "sue and be sued" clause. The court, nevertheless, concluded that such jurisdictional overlap did not limit the independent grant of federal jurisdiction conferred by the "sue and be sued" clause. *See American National Red Cross,* --- U.S. at ----, 112 S.Ct. at 2470; *D'Oench, Duhme & Co.,* 315 U.S. at 455-56 n. 2, 62 S.Ct. at 679 n. 2. Thus, section 1082(a)(2)'s reference to cases arising under the GSL program does not limit the independent jurisdictional grant Congress conferred on the district courts through the "sue and be sued" clause.

Admittedly, *American National Red Cross* involved a federally chartered corporation and this case, in contrast, involves a federal agency. We are, however, unable to discern any reason why *American National Red Cross* 's holdings should be limited solely to statutory "sue and be sued" clauses involving federally chartered corporations. The statutory interpretation analysis that the Supreme Court conducted in *American National Red Cross* can be straightforwardly applied to other statutes beyond the realm of federally chartered corporations. Importantly, the strongest

support for our holding in this case can be found in Justice Scalia's dissent in *American National Red Cross.*

In *American National Red Cross,* Justice Scalia drew a distinction between "sue and be sued" clauses that merely confer capacity to be sued in federal courts and "sue and be sued" clauses that confer both capacity and jurisdiction. --- U.S. at ----, 112 S.Ct. at 2476 (Scalia, J., dissenting). Justice Scalia was of the opinion that the "sue and be sued" clause at issue in *American National Red Cross* "merely establishes that the Red Cross is a juridical person." *American National Red Cross,* --- U.S. at ----, 112 S.Ct. at 2476 (Scalia, J., dissenting). Two factors led Justice Scalia to conclude that the "sue and be sued" provision at issue in *American National Red Cross* did not confer federal court jurisdiction. First, he asserted that the statute's general reference to the "federal courts" was too broad to confer subject matter jurisdiction on the federal courts. *American National Red Cross,* --- U.S. at ----, 112 S.Ct. at 2477 (Scalia, J., dissenting). If the statute had mentioned "a particular federal court," Justice Scalia believed a stronger argument could be made that Congress intended to confer subject matter jurisdiction upon the federal courts. *See American National Red Cross,* --- U.S. at ----, 112 S.Ct. at 2477 (Scalia, J., dissenting). Second, Justice Scalia objected to the fact that the statute in *American National Red Cross* did not distinguish between federal courts and state courts. *American National Red Cross,* --- U.S. at ----, 112 S.Ct. at 2477 (Scalia, J., dissenting). According to Justice Scalia, the American National Red Cross charter's parallel treatment of federal

and state courts undermined a jurisdictional reading of the statute because a federal entity could not file an action in state court without first "establishing the independent basis of jurisdiction appropriate under state law." *American National Red Cross,* --- U.S. at ----, 112 S.Ct. at 2477 (Scalia, J., dissenting) (citations omitted).

Section 1082, however, addresses both of the concerns enumerated by Justice Scalia in his dissent in *American National Red Cross.* Section 1082(a)(2) allows the Secretary to "sue and be sued ... *in any district court of the United States.*" (emphasis supplied). Congress therefore has clearly indicated the particular federal court it sought to confer jurisdiction upon. *See American National Red Cross,* --- U.S. at ----, 112 S.Ct. at 2477 (Scalia, J., dissenting). Additionally, section 1082(a)(2) allows the Secretary to "sue and be sued in any court of record of a state *having general jurisdiction*...." (emphasis supplied). Congress, therefore, has acknowledged that the Secretary may not file a state court action without establishing "the independent basis of jurisdiction appropriate under state law." *See American National Red Cross,* --- U.S. at ----, 112 S.Ct. at 2477 (Scalia, J., dissenting). Moreover, we believe the arguments in support of federal court jurisdiction in this case are more compelling than in *American National Red Cross.* This case involves a federal agency's oversight and application of a federal statutory and regulatory scheme. We believe Congress's reasons for ensuring federal court jurisdiction in this instance would have been greater than for a federally chartered corporation.

## CONCLUSION

Accordingly, we hold that the "sue and be sued" clause of section 1082(a)(2) confers federal subject matter jurisdiction through its specific reference to the federal district courts. The district court's order dismissing the appellants' complaint with prejudice is vacated and the case is remanded to the district court.

VACATED and REMANDED.