13-0801, 13-0840
Carver v. Nassau County

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

————————————

August Term, 2012

(Argued: June 10, 2013          Decided: September 20, 2013
Corrected: September 27, 2013)

Docket Nos. 13-0801, 13-0840

————————————

JAMES CARVER, as President of the Nassau County Police Benevolent Association, GARY LEARNED, as President of the Superior Officers Association of Nassau County, THOMAS R. WILLDIGG, as President of the Nassau County Police Department Detectives' Association, Inc.,

*Plaintiffs-Appellees*,

—v.—

NASSAU COUNTY INTERIM FINANCE AUTHORITY, RONALD A. STACK, LEONARD D. STEINMAN, ROBERT A. WILD, CHRISTOPHER P. WRIGHT, GEORGE J. MARLIN, THOMAS W. STOKES, in their official capacities as directors/members of the Nassau County Interim Finance Authority, EDWARD MANGANO, in his official capacity as County Executive of Nassau County, GEORGE MARAGOS, in his official capacity as Nassau County Comptroller, COUNTY OF NASSAU,

*Defendants-Appellants.*

————————————

1

Before:

POOLER and CARNEY, *Circuit Judges*, and KORMAN, *District Judge*.[*]

Appeal from a judgment of the United States District Court for the Eastern District of New York (Wexler, *J.*), which granted summary judgment to the plaintiffs. Plaintiffs challenged a wage freeze imposed by the Nassau County Interim Finance Authority, asserting that it violated the Contracts Clause, Article I, Section 10 of the Constitution, and that the Authority's power to impose a wage freeze pursuant to N.Y. Pub. Auth. Law § 3669 had expired. The district court granted summary judgment to the plaintiffs based solely on their state law statutory interpretation claim. On appeal, defendants challenged the district court's jurisdiction to reach that claim as well as the merits of its decision. We agree that the district court abused its discretion in exercising pendent jurisdiction over the statutory construction claim.

VACATED AND REMANDED.

> ALAN M. KLINGER, Stroock & Stroock & Lavan LLP, New York, NY, HARRY GREENBERG, SETH H. GREENBERG (*on the brief*), Greenberg Burzichelli Greenberg P.C., Lake Success, NY, *for Plaintiffs-Appellees*.

[*]The Hon. Edward R. Korman, Senior United States District Court Judge for the Eastern District of New York, sitting by designation.

CHRISTOPHER J. GUNTHER, Skadden, Arps, Slate, Meagher & Flom, New York, NY, *for Defendants-Appellants Nassau County Interim Finance Authority, Ronald A. Wild, Christopher P. Wright, George J. Marlin and Thomas W. Stokes, in their official capacities as directors/members of the Nassau County Interim Finance Authority*.

MARC S. WENGER (ANA C. SHIELDS, *on the brief*), Jackson Lewis LLP, Melville, NY, *Special Counsel for the County Attorney*, for Defendants-Appellants, Edward Mangano, *in his official capacity as County Executive of Nassau County*, George Maragos, *in his official capacity as Nassau County Comptroller*, and County of Nassau.

HOWARD WEIN, Koehler & Isaacs LLP, New York, NY, *for* Nassau County Sheriff's Correction Officers Benevolent Association as *amicus curiae in support of Plaintiffs-Appellees*.

STEVEN A. CRAIN and DAREN J. RYLEWICZ, (LESLIE C. PERRIN, *of counsel*), Civil Service Employees Association, Inc., Albany, NY, *for* Civil Service Employees Association, Inc., as *amicus curiae in support of Plaintiffs-Appellees*.

EDWARD R. KORMAN, *District Judge*:

Plaintiffs, representatives of various Nassau County police unions, brought suit to contest a wage freeze imposed in 2011 on Nassau County employees, including police officers, by the Nassau Interim Finance Authority ("NIFA"), a public benefit corporation formed by the New York State Legislature in 2000 in

response to the County's unstable financial condition. The defendants are NIFA, Nassau County, and various officers of both. The police unions contend that the wage freeze was imposed in violation of the Contracts Clause, Article I, Section 10 of the Constitution, and that the authority conferred on NIFA to impose such a freeze had expired under the terms of the applicable statute, N.Y. Pub. Auth. Law § 3669(3).

The district court granted summary judgment to the police unions on their state law claim without reaching the constitutional question. On appeal, defendants argue that the applicable statute was wrongly construed. They also contend, principally, that the district judge abused his discretion in exercising jurisdiction over the pendent state law claim.

## BACKGROUND

The Nassau Interim Finance Authority is a public benefit corporation created by the New York State Legislature in June 2000 in response to the growing financial crisis facing Nassau County. The County, which was $2.7 billion in debt, had been forced to allocate nearly one quarter of its spending to servicing that debt, and the County's debt was downgraded by rating agencies to one level above junk status. The Legislature passed the NIFA Act, creating NIFA as a public benefit corporation to oversee the county's finances. N.Y. Pub. Auth. Law § 3650 *et seq.* The Act

4

provided that NIFA would be governed by a panel of directors, appointed by the governor, who serve four-year terms without compensation. *Id.* § 3653(1). The directors are assisted by a small professional staff.

The NIFA Act also provided $105 million in State taxpayer grants to Nassau County through 2004 and allowed NIFA to issue bonds to refinance and restructure the County's debt. *Id.* § 3656. The NIFA Act also provided for different oversight periods: the initial "interim finance period," a subsequent "monitoring and review" period, and a third "control period" that could be triggered upon NIFA's determination that the county was likely to sustain an operating funds deficit of 1% or more. *Id.* §§ 3651(14), 3668-69. Once the County regained financial independence, the "monitoring and review" period ended, and NIFA's bonds were retired, the Act contemplated that NIFA would dissolve. *Id.* § 3652.

During the interim finance period, NIFA had the responsibility of approving the County's budgets and financial plans. *Id.* § 3667. This period was meant to conclude in 2004, though it was extended twice by the state legislature and ultimately ended in 2008. At that point, NIFA began a period of monitoring and oversight, during which it retained the power to review and audit County budgets, but was no longer required to approve the County's annual financial plans. *Id.* § 3668. If the County's financial situation were to deteriorate, however, NIFA would

be obligated to order a control period. *Id.* § 3669. During a control period, NIFA is authorized to take necessary remedial measures, which include requiring the County to adopt a revised financial plan approved by NIFA, auditing the County government, approving or disapproving proposed County borrowing, and ordering a temporary wage freeze on County employees. *Id.*

On January 26, 2011, NIFA imposed a control period. After Nassau County unsuccessfully challenged the imposition of the control period in an Article 78 proceeding, *County of Nassau v. Nassau County Interim Finance Authority*, 33 Misc. 3d 227 (N.Y. Sup. Ct. 2011), NIFA passed two resolutions freezing wages for all County employees on March 24, 2011. The wage freeze forced the County to breach the terms of the collective bargaining agreements it had entered into with the various County police unions. On April 1, 2011, the police unions commenced this action in federal court, alleging that the wage freeze violated the Contracts Clause, Article I, Section 10 of the Constitution. They later amended their complaint to add a second claim that NIFA lacked the authority under state law to order a wage freeze after the conclusion of the interim finance period.

After discovery on the Contracts Clause claim, the parties filed cross-motions for summary judgment. The district court granted summary judgment to the police unions, agreeing with their interpretation of the NIFA Act that NIFA's authority to

6

freeze wages was limited to the duration of the interim finance period. The district court did not discuss the issue of jurisdiction beyond the observation that "[f]ederal jurisdiction is based upon Plaintiffs' claim that the wage freeze violates the Contracts Clause of Article I of the United States Constitution." *Carver v. Nassau Cnty. Interim Fin. Auth.*, 923 F. Supp. 2d 423, 424 (E.D.N.Y. 2013). Nevertheless, the district court did not reach this claim, observing that the statutory question was "most appropriate for summary disposition." *Id*. at 427.

## DISCUSSION

The district courts have supplemental jurisdiction over pendent state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Nevertheless, a district court "may decline to exercise supplemental jurisdiction over a claim" under any of four circumstances: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." *Id.* § 1367(c). We review a district court's decision to assert supplemental jurisdiction over a state law claim under an abuse-of-discretion

7

standard. *See Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 243 (2d Cir. 2011).

This case concededly presents an unresolved question of state law and is also one in which there are exceptional circumstances which provide compelling reasons for declining jurisdiction. Unlike a case involving a dispute between private parties, this case involves the construction of a significant provision of an extraordinarily consequential legislative scheme to rescue Nassau County from the brink of bankruptcy, to monitor its financial condition, and to take steps necessary to prevent a relapse. In order to carry out this legislative scheme, the Legislature created NIFA, which it denominated a "corporate governmental agency and instrumentality of the state constituting a public benefit corporation." N.Y. Pub. Auth. Law § 3652(1). The Legislature found and declared:

> that the continued existence of such condition of fiscal difficulties is contrary to the public interest of the county and the state and seriously threatens to cause a decline in the general prosperity and economic welfare of the inhabitants of the county and the people of this state [and that] [t]he impairment of the credit of the county of Nassau may affect the ability of other municipalities in the state to issue their obligations at normal interest rates. Such effect is a matter of state concern.

N.Y. Pub. Auth. Law, ch. 43-A, art. 10-D, T. 1 (McKinney 2002). The legislative history also indicates that the County had:

request[ed] the enactment of all of the provisions of [the] act as necessary and in the public interest to accomplish the objective of improving market reception for the necessary sale of bonds and other obligations of the county by discouraging certain practices which have occurred in the past and providing direction and assistance in budgetary and financial matters to restore the county to fiscal health, while retaining the county's right to operate independently as a municipal corporation of the state of New York.

*Id.*

Moreover, the NIFA Act itself provides that "the creation of NIFA and the carrying out of its purposes are in all respects for the benefit of the people of the state of New York and are public purposes. Accordingly, NIFA shall be regarded as performing an essential governmental function in the exercise of the powers conferred upon it by this title." N.Y. Pub. Auth. Law § 3661(1). In sum, interpretation of the NIFA Act implicates an important element of NIFA's oversight responsibility and its ability to carry out its purposes – specifically, whether the authority conferred on NIFA to control county spending by imposing a wage freeze on county employees had expired after the conclusion of the interim finance period.

The parties debate whether the claim substantially predominates over the Contracts Clause cause of action simply because it was decided first by the district court. We need not resolve this debate. It is enough that the construction of the provision of the NIFA Act at issue raises an unresolved issue of state law – the

9

interpretation of a poorly drawn statute – that should be resolved by the New York state courts because the manner in which the statute is construed implicates significant state interests. As we have previously observed, "[w]here a pendent state claim turns on novel or unresolved questions of state law, especially where those questions concern the state's interest in the administration of its government, principles of federalism and comity may dictate that these questions be left for decision by the state courts." *Seabrook v. Jacobson*, 153 F.3d 70, 72 (2d Cir. 1998). Indeed, in analogous circumstances, we stated that, while federal courts should where possible exercise jurisdiction, "[w]here a decision is to be made on the basis of state law . . . the Supreme Court has long shown a strong preference that the controlling interpretation of the relevant statute be given by state, rather than federal, courts." *Allstate Ins. Co. v. Serio*, 261 F.3d 143, 150 (2d Cir. 2001).

The Nassau County defendants argue that jurisdiction over this pendent state law claim should be denied because of the special statutory procedure that New York law – C.P.L.R. Article 78 – provides for adjudicating claims that a body or officer has acted in a manner not authorized by state law. NIFA argues only that the special procedure is simply a factor to be taken into account in whether pendent jurisdiction should be exercised. Both arguments are predicated on the subsection of the statute that limits these proceedings to "the supreme court in the county

10

specified" in C.P.L.R. § 506(b), C.P.L.R. § 7804(b), and a provision in the NIFA Act providing that "[t]he venue of every action, suit or special proceeding brought against the authority *shall be laid* in the supreme court in the county of Nassau." N.Y. Pub. Auth. Law § 3662(5) (emphasis added).

We need not decide, however, whether Article 78 can, on its own, deprive a federal court of jurisdiction over claims brought under that provision, as some district court cases have held, *see, e.g.*, *Cartagena v. City of New York*, 257 F. Supp. 2d 708, 710 (S.D.N.Y. 2003). *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 164–68 (1997), a case which goes unmentioned by the parties, would suggest otherwise, as long as those claims would otherwise fall within the court's pendent jurisdiction. *See also Casale v. Met. Transp. Auth.*, No. 05-cv-4232, 2005 WL 3466405, at *6 (S.D.N.Y. Dec. 19, 2005) (Mukasey, J.). For present purposes, it is enough to recognize that Article 78 reflects a state preference for a state mode of procedure that "is designed to facilitate a summary disposition of the issues presented . . . and has been described as a fast and cheap way to implement a right that is as plenary as an action, culminating in a judgment, but is brought on with the ease, speed and inexpensiveness of a mere motion." *Davidson v. Capuano*, 792 F.2d 275, 280 (2d Cir. 1986) (internal quotation marks and citations omitted). Whether or not Article 78 can itself deprive the district court of jurisdiction over claims brought under its

provisions, the state preference to try Article 78 claims in state court bears on our assessment of whether the district court abused its discretion in deciding nonetheless to exercise pendent jurisdiction here, where other factors, too, strongly support declining that jurisdiction. We hold that the district court abused its discretion in exercising pendent jurisdiction.

On remand the district court should dismiss the state-law claim, but retain jurisdiction over plaintiffs' federal constitutional claim. If plaintiffs decide to pursue their state-law statutory-construction or other related claims in state court, the district court may decide, within its discretion, to stay the federal action until the state-court litigation has completed because the state courts' resolution of the state claim may obviate the need to resolve the federal constitutional question. *Railroad Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941); *see also Reetz v. Bozanich*, 397 U.S. 82, 87 (1970) (relying on the *Pullman* doctrine to hold that the "federal court should have stayed its hand while the parties repaired to the state courts for a resolution of their state constitutional questions" that could have obviated the need to answer the federal constitutional claim); *Freda v. Lavine*, 494 F2d 107, 110 (2d Cir. 1974).

In choosing to reverse the district court's exercise of pendent jurisdiction, we have passed over the argument that NIFA is entitled to sovereign immunity – an argument that was raised for the first time on appeal. Normally, in cases involving

the issue of Article III subject matter jurisdiction, this issue would have to be addressed first. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (striking down the "doctrine of hypothetical jurisdiction," by which difficult subject matter jurisdiction questions were bypassed to allow district courts to rule on the merits of the case when the merits were more easily resolved). Nevertheless, whether the claim of sovereign immunity constitutes a true issue of subject matter jurisdiction or is more appropriately viewed as an affirmative defense is an open question in the Supreme Court and the Second Circuit. *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 391 (1998) (leaving open the question of whether "Eleventh Amendment immunity is a matter of subject-matter jurisdiction"). More recently, we held that the burden of proof in a case involving the assertion of sovereign immunity is on the party asserting it—a holding that we acknowledged is more consistent with the understanding that sovereign immunity was an affirmative defense. *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 237-39 (2d Cir. 2007) (Raggi, J.).

We need not resolve this issue because, even if sovereign immunity is a "matter of subject matter jurisdiction," *Steel Co.* makes clear that we are not bound to decide any particular jurisdictional question before any other. 523 U.S. at 100 n.3 (noting that it is permissible to decide a "discretionary jurisdictional question before

13

a nondiscretionary jurisdictional question"); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (The Court's opinion in *Steel Co.* "does not dictate a sequencing of jurisdictional issues."). We have exercised the discretion that *Steel Co.* allows us to reach the issue of the exercise of supplemental jurisdiction rather than applying a complicated six-part test to an arguably close question.

## CONCLUSION

Under the circumstances of this case, the district judge should have declined to reach the pendent state law claim, which required it to interpret, as a matter of first impression, an important state legislative scheme to prevent the fiscal demise of Nassau County. Consequently, the judgment of the District Court granting the plaintiffs' motion for summary judgment on the pendent state law claim is vacated and the case is remanded with instructions to dismiss that claim.

**VACATED and REMANDED.**