# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 9, 2014　　　Decided December 30, 2014

No. 13-7036

HENOK ARAYA,
APPELLANT

v.

JPMORGAN CHASE BANK, N.A., ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cv-00335)

*Henok Araya*, *pro se*, argued the cause and filed the briefs for appellant.

*Jason C. Hicks* argued the cause for appellees. On the brief were *Bizhan Beiramee* and *Jeffrey L. Tarkenton*.

Before: BROWN, MILLETT and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

WILKINS, *Circuit Judge*:

Henok Araya owned and operated a rental property in the District of Columbia, which he leased to tenants. After several years, the bank foreclosed on his mortgage and sold the property to the highest bidder. Araya sued in D.C. Superior Court challenging the foreclosure proceedings that ultimately resulted in the sale of his property. After defendants removed to federal court and moved for judgment on the pleadings, the District Court rejected Araya's challenges. Because the D.C. statutory and common law claims against the bank and its foreclosing agent should have been decided by the local courts, we vacate the District Court's opinions and orders relating to claims against those parties.

**I.**

In October 2005, Henok Araya[1] purchased property located at 2630 Myrtle Avenue NE in Washington, D.C. The purchase was financed by Chase Home Finance LLC ("Chase")[2] and the property was encumbered by a security instrument consisting of a note and a deed of trust. Araya purchased the property as an investment property in which tenants would live, and a rider to that effect was attached to the deed of trust. J.A. 240.

---

[1] Mr. Araya transposed his first and last names in the case caption of his Superior Court complaint, and most of the earlier pleadings and court orders repeated that mistake.

[2] Chase Home Finance LLC originated the loan. JPMorgan Chase appeared before this Court as successor by merger.

On December 1, 2008, Araya sent Chase a letter indicating that he had been unable to "communicate and solve the issues" with several accounts. He asked that all correspondence be directed to 1800 New Jersey Ave NW. J.A. 69. The next day, Chase sent Araya an acceleration warning at that address, alerting Araya that his loan on the Myrtle Avenue property was in default. The letter told Araya that he owed $5,814.28 and had 32 days to cure the default. J.A. 71. Chase sent similar acceleration warnings on March 4, 2009; April 4, 2009; May 2, 2009; and June 2, 2009. J.A. 75-93.

On September 21, 2009, Araya sent Chase a letter claiming that his mortgage payment was not behind and "requesting a payment research." He provided a phone number that Chase should call with questions and again used the New Jersey Avenue address. J.A. 95.

On November 18, 2009, Chase sent another acceleration warning, this time to 908 New Hampshire Ave NW.

According to Araya, he mailed Chase a certified letter on January 20, 2010, requesting the correct amount to bring his account current. In that letter, he asked that Chase reply by email and by mail to 908 New Hampshire Ave NW #400. He sent identical letters on February 2, 2010, and March 17, 2010. Around February 18, 2010, Araya received a notice from Shapiro & Burson, LLP, that his property was to be sold at a foreclosure sale.

On March 24, 2010, the property was sold at public auction. J.A. 104-05. The Federal Home Loan Mortgage Corporation ("Freddie Mac") purchased the home and sold it in turn to Dorothy Ihuoma. *Id*.; J.A. 46.

On February 2, 2012, Araya filed a complaint in the Superior Court of the District of Columbia against Chase and Shapiro & Burson asserting numerous claims including breach of contract, fraud, illegal foreclosure, breach of fiduciary duty, forgery, misrepresentation, negligence, statutory violations, and violation of the takings clause of the Fifth Amendment. The gravamen of Araya's complaint was that Chase and Shapiro & Burson had not provided the proper notice before foreclosure and had not given him a meaningful opportunity to cure. Citing D.C. Sup. Ct. Civ. R. 19,[3] Araya joined Ihuoma and Fannie Mae[4] as defendants on the theory that they were persons with an "interest in the property." J.A. 289-295.

On March 1, 2012, the defendants removed to the United States District Court for the District of Columbia on the basis of federal question jurisdiction. Notice of Removal p. 3 (March 1, 2012). On March 5, 2012, Ihuoma filed a motion to dismiss, arguing that she was protected from suit as a bona fide purchaser; the motion was granted over Araya's opposition on September 11, 2012. Order on Motion to Dismiss p. 1 (Sept. 11, 2012). Araya did not designate the order granting Ihuoma's dismissal in his notice of appeal or in any other way demonstrate intent to appeal that judgment of dismissal, and therefore this order is final and not before us. *See* Fed. R. App. P. 3(c)(1)(B); *see also Brookens v. White*, 795 F.2d 178, 180 (D.C. Cir. 1986) ("[Appellant's] failure to specify the [dismissal] order by name in his notice of appeal, or otherwise to evidence his intent to pursue an appeal from

---

[3] The Superior Court rule is identical for all intents and purposes to Fed. R. Civ. P. 19.

[4] Fannie Mae is the common moniker for the Federal National Mortgage Association.

that order, renders the notice inapplicable to the earlier order."). Ihuoma appears before this Court solely to contest Araya's appeal of the District Court's denial of the motions to amend his complaint.

On March 7, 2012, Araya filed a document entitled "Plaintiff's opposition to removal of case." Response to Document (March 7, 2012). In this document, Araya argued that his complaint raised no federal questions and was entirely based on D.C. law. *Id.* at p. 2. He also asserted that the parties were not diverse. *Id.* at p. 1.

On March 20, 2012, Chase and Fannie Mae filed a memorandum in opposition to Araya's document, which they had construed as a remand motion. Response to Document p. 1 (March 20, 2012). Chase and Fannie Mae argued that federal jurisdiction was appropriate because Araya raised constitutional claims and because Fannie Mae's "sue and be sued" clause, 12 U.S.C. §1723a(a), created federal subject matter jurisdiction under *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Raines*, 534 F.3d 779 (D.C. Cir. 2008).

On May 11, 2012, the District Court denied Araya's remand motion on the grounds that "[t]he D.C. Circuit has held that § 1723a(a) is a grant of subject matter jurisdiction." Order p. 2 (May 11, 2012).

On May 25, 2012, Chase and Fannie Mae filed a joint motion for judgment on the pleadings. Motion for Judgment on the Pleadings (May 25, 2012). Shapiro & Burson filed a similar motion on June 19, 2012. Motion for Judgment on the Pleadings (June 19, 2012). On July 5, 2012, Araya filed a motion for partial summary judgment. Motion for Partial Summary Judgment (July 5, 2012). Araya also filed two motions for leave to file an amended complaint, the first on

July 26, 2012, and the second on October 24, 2012. Motion for Leave to File (July 26, 2012); Motion for Leave to File (Oct. 24, 2012). The proposed amended complaints eliminated the Fifth Amendment takings claim and added two new counts: a claim under the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605, and a statutory claim for wrongful foreclosure under D.C. Code § 42-815. The only difference in the two proposed complaints is that the second complaint replaces references to Fannie Mae with references to Freddie Mac.

On February 13, 2013, the District Court issued an order and opinion. *Henok v. Chase Home Finance, LLC*, 922 F. Supp. 2d 110 (D.D.C. 2013). The District Court dismissed Fannie Mae and denied leave to add Freddie Mac on the grounds that "the second amended complaint fails to state a claim for relief on any ground." *Id.* at 124-25. Although Fannie Mae's presence in the suit was the perceived linchpin of federal subject matter jurisdiction, the District Court did not consider whether it should proceed to the other claims or remand them to the Superior Court. The District Court instead ruled against Araya on all of his state-law claims, construing D.C. law to do so. Araya filed a timely appeal.

On appeal, Araya challenges (1) the District Court's grant of partial summary judgment to Chase, (2) the District Court's denial of his motions for leave to amend, and (3) the District Court's grant of judgment on the pleadings. After oral argument, we asked the parties for supplemental briefing on subject matter jurisdiction. We do not address the merits of Araya's challenges because we conclude that the predicate for supplemental jurisdiction evaporated once Fannie Mae was dismissed and the District Court denied leave to amend to add any new federal claims.

**II.**

Ordinarily, the plaintiff is entitled to select the forum in which he wishes to proceed. *See, e.g.*, *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 436 (2007) (referencing "the consideration ordinarily accorded the plaintiff's choice of forum"); *Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.*, 535 U.S. 826, 831-32 (2002) (discussing extent to which plaintiff is master of the complaint). Congress has provided, however, that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction" may be removed by the defendants to the federal courts. 28 U.S.C. § 1441(a) (2012). The removal notice must contain "a short and plain statement of the grounds for removal," *id.* § 1446(a).

Even if a claim raising a federal question is properly removed from state court to federal court, the district court has an obligation to employ its discretion to determine whether to exercise supplemental jurisdiction over the ancillary state-law claims. *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 167, 172-73 (1997). In doing so, the district court should consider "a host of factors, . . . including the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims." *Id*. at 173. In addition, "[i]f the federal question is eliminated relatively soon after removal, it is ordinarily preferable to remand the case rather than dismiss the case." 16-107 Moore's Federal Practice - Civil § 107.41; *see also* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

In the removal notice, the defendants asserted two bases for federal court jurisdiction. First, defendants argued that Araya's Fifth Amendment claims against Chase and Shapiro & Burson were sufficient to create federal jurisdiction under 28 U.S.C. § 1331, which gives the federal district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Second, defendants argued that 12 U.S.C. § 1723a(a), which authorizes Fannie Mae "to sue and to be sued" in federal courts, creates federal jurisdiction because Fannie Mae was a named party.

We consider each asserted basis of subject matter jurisdiction in turn.

## A.

As a general matter, "the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). It has long been recognized, however, that "a suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial . . . or where such a claim is wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 682-83 (1946).

Araya's Fifth Amendment claim against Chase and Shapiro & Burson is insufficient to sustain jurisdiction because it has been foreclosed by the Supreme Court. *See Steel Co.*, 523 U.S. at 89. It is beyond dispute that the Fifth Amendment "appl[ies] to and restrict[s] only the Federal Government and not private persons." *Pub. Utils. Comm'n of D.C. v. Pollak*, 343 U.S. 451, 461 (1952); *see also San Francisco Arts & Athletics, Inc. v. U.S. Olympic Committee*,

483 U.S. 522, 542 (1987) ("The fundamental inquiry is whether the USOC is a governmental actor to whom the prohibitions of [the Fifth Amendment] apply."); *Corrigan v. Buckley*, 271 U.S. 323, 330 (1926) ("The Fifth Amendment is a limitation only upon the powers of the General Government and is not directed against the action of individuals.") (citations omitted) (internal quotation marks omitted); *Barron v. Baltimore*, 32 U.S. 243, 250-51 (1833) ("[T]he fifth amendment to the constitution . . . is intended solely as a limitation on the exercise of power by the government of the United States."). There is no plausible argument that either Chase or Shapiro & Burson is a governmental actor, and indeed Araya's complaint does not even allege that either defendant is a governmental actor. The Fifth Amendment claim is thus an insufficient basis for federal subject matter jurisdiction. Understandably, the District Court did not rely upon the takings claim as a basis for jurisdiction when it denied Araya's request to remand, and it later granted the motion to dismiss that claim.

**B.**

The argument regarding Fannie Mae presents a more complicated question.

At the time of removal, Fannie Mae was named in the Superior Court complaint as a party that "upon information and belief . . . ha[d] an interest in the property," and it is settled law in this Circuit that 12 U.S.C. § 1723a(a) ordinarily creates federal jurisdiction "in Fannie Mae cases." *Pirelli*, 534 F.3d at 785.[5] Thus, it was reasonable for the District

---

[5] The Supreme Court has addressed a similar statute, holding that the Red Cross's "'sue and be sued' provision confers original jurisdiction on federal courts over all cases to which

Court to deny Araya's motion to remand, because Fannie Mae was named and had been served as a defendant in the case, and supplemental jurisdiction over the ancillary state claims (with their attendant party defendants) would appear appropriate insofar as those claims involved the same property and were related to any claim involving Fannie Mae. *See LaShawn A. v. Barry*, 87 F.3d 1389, 1396 (D.C. Cir. 1996) (en banc) ("Whether a court may decide pendent claims is determined on the face of the pleadings.").

However, after the denial of the motion to remand, counsel jointly representing Fannie Mae and Chase moved to dismiss the claim against Fannie Mae, informing the District Court for the first time that there was no basis for Fannie Mae's inclusion in this controversy. The documents attached to Araya's Superior Court complaint make it clear that the property was purchased at the foreclosure auction by the Federal Home Loan Mortgage Corporation – Freddie Mac. J.A. 15-35. Araya apparently mistook Freddie Mac for Fannie Mae. The presence of Fannie Mae in this suit is therefore entirely illusory. (It is not lost on us that Fannie Mae waited until after it had defeated plaintiff's choice of forum to inform the District Court of this rather salient fact.)

Neither our decision in *Pirelli* nor the Supreme Court's decision in *Red Cross* contemplates a situation such as this, in which a federally chartered corporation without any connection whatsoever to the dispute is named as a party by mistake. This case does not require us to resolve the troubling question of whether *Pirelli* and *Red Cross* permit automatic

the Red Cross is a party, with the consequence that the organization is thereby authorized to remove from state to federal court any state-law action it is defending." *American Nat'l Red Cross v. S.G.*, 505 U.S. 247, 248 (1992).

federal jurisdiction any time Fannie Mae is mentioned in a party's pleadings, however, and we decline to do so. On the particular facts presented in this appeal – in which a *pro se* D.C. resident accidentally named the wrong federally chartered corporation as a potentially interested party in his suit against defendants residing outside the District of Columbia and then sought to correct that mistake by naming the correct federally chartered corporation – we are satisfied that the District Court had original jurisdiction. *See Steel Co.*, 523 U.S. at 89.[6]

## C.

The District Court dismissed Fannie Mae from the lawsuit, *Henok*, 922 F. Supp. 2d at 117-24, and this dismissal was summarily affirmed by a panel of this Court. *Henok v. JPMorgan Chase Bank, N.A.*, No. 13-7036, 2013 WL 4711675 (D.C. Cir. Aug. 2, 2013) (per curiam). Even though the basis of federal question jurisdiction had vanished with Fannie Mae's dismissal,[7] the District Court went on to rule on

---

[6] Judge Millett would hold that because minimal diversity exists between these parties (Araya, the plaintiff, is a citizen of D.C., whereas at least one of the defendants, JPMorgan Chase, is not), the exercise of Article III jurisdiction in this instance to dismiss Ihuoma and Fannie Mae from the case was permissible. *See State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 531 (1967) ("Article III poses no obstacle to the legislative extension of federal jurisdiction, founded on diversity, so long as any two adverse parties are not co-citizens.").

[7] The District Court also denied Araya's motion to amend his complaint to add Freddie Mac as a defendant or to add a claim asserting a RESPA violation, finding that either addition

the merits of Araya's state-law claims against Chase and Shapiro & Burson.  The question thus becomes whether that exercise of supplemental jurisdiction was proper.

## III.

The jurisdictional grant in the supplemental jurisdiction statute potentially confers jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  However, the statute also provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."  *Id.* § 1367(c).  This case implicates § 1367(c)(3) because the District Court was called upon to decide the validity of several state and common law claims despite the dismissal of all claims giving it federal question jurisdiction.

Prior to the enactment of the supplemental jurisdiction statute, the law in this Circuit was that "[i]f a district court has power to adjudicate a pendent claim, the court must then engage in a second inquiry to determine whether to exercise its discretion to decide the local claim."  *Dimond v. District of Columbia*, 792 F.2d 179, 188 (D.C. Cir. 1986).  On several occasions, we found an abuse of discretion when the district

---

would be futile.  *Henok*, 922 F. Supp. 2d at 123-24.  We agree with this conclusion.

court failed to remand the case to the D.C. courts when it was not appropriate to retain jurisdiction. *See, e.g.*, *Financial General Bankshares, Inc. v. Metzger*, 680 F.2d 768, 777 (D.C. Cir. 1982) ("When a District Court reaches out to decide unsettled issues of state law despite the pretrial dismissal of all federal claims, its action may be an abuse of discretion."); *REA Exp., Inc. v. Travelers Ins. Co.*, 554 F.2d 1200, 1201 (D.C. Cir. 1977) (per curiam) (altering district court judgment so as to allow plaintiffs to file in state court). Moreover, not engaging in the analysis of whether to remand could itself potentially be an abuse of discretion. *See Dimond*, 792 F.2d at 188. We have continued to apply this two-part test even after the enactment of the supplemental jurisdiction statute. *See Women Prisoners of D.C. Dep't of Corrections v. District of Columbia*, 93 F.3d 910, 921-22 (D.C. Cir. 1996) (noting that § 1367(c) does not disturb the *Gibbs* framework); *see also* H.R. REP. NO. 101-734 (1990), at 29 ("As under current law, subsection (c) requires the district court, in exercising its discretion, to undertake a case-specific analysis.").

In keeping with the principle that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties," *United Mineworkers of America v. Gibbs*, 383 U.S. 715, 726 (1966), we have explained that "[i]n the usual case in which all federal-law claims are dismissed before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Shekoyan v. Sibley Intern.*, 409 F.3d 414, 424 (D.C. Cir. 2005) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)) (holding that the district court properly exercised its discretion to remand state-law claims after dismissing federal claims). Thus, we have repeatedly held that a district court abuses its discretion when it maintains jurisdiction over a removed case presenting

unsettled issues of state law after the federal claims have been dismissed.

For example, in *Edmondson & Gallagher v. Alban Towers Tenants Association*, this Court considered a case in which plaintiffs had filed a suit in D.C. Superior Court alleging a number of state and common law claims in addition to a federal RICO claim. 48 F.3d 1260, 1262 (D.C. Cir. 1995). Defendants removed to district court and filed summary judgment motions. *Id.* at 1263. "After the district court dismissed the federal claims, however, it abused its discretion by reaching the merits of the local-law claims." *Id.* In evaluating the district court's exercise of its discretion, this Court determined that the dismissal of the federal claim, combined with the unsettled nature of the law regarding the state and common law claims, compelled the district court to remand to D.C. Superior Court. *Id.* at 1266-67; *see also Women Prisoners*, 93 F.3d at 923 ("[W]e hold that the district court abused its discretion in exercising jurisdiction over these local claims in violation of the supplemental jurisdiction statute and the well-established principles it has codified."); *Financial General*, 680 F.2d at 778 (holding that district court "abused its discretion by failing to take into account the uncertainty of state law and by proceeding to trial on the local claims after the dismissal of the federal claims").

Guided by this precedent, we are constrained to hold that the District Court abused its discretion. Unfortunately, the District Court did not explain in its opinion whether or how it applied its discretion to exercise supplemental jurisdiction over the state-law claims in this case. *See Dimond*, 792 F.2d at 188. As in *Edmondson*, "if the district court considered the relevant factors at all, it left no written trace of the process; after dismissing the [federal] claims, the court plunged into the common law ones with no apparent pause for breath." 48

F.3d at 1266. In *Edmondson*, we concluded there was no reason to remand the case to the district court to exercise its discretion whether to remand in the first instance, because the circumstances compelled only one conclusion. *Id*. at 1266-67. We noted that the complaint raised novel issues of state law, which was another reason to decline supplemental jurisdiction in addition to the dismissal of all of the federal claims. *Id*. (citing 28 U.S.C. § 1367(c)(1)). Similar issues permeate this case:

(1) Araya's complaint alleges numerous vaguely worded claims and allegations, which the District Court construed with the liberality ordinarily afforded to *pro se* litigants. Although we acknowledge the District Court's considerable efforts in finding a substantial number of arguable local statutory and common law claims in Araya's pleadings, the result in this case was a 34-page opinion, less than a page of which involved federal claims. To the extent that Araya's complaint articulates any plausible state-law claims, the D.C. Superior Court is eminently more qualified than a federal court to navigate the as-yet-unsettled contours of the statutory and common law claims potentially presented. And even were none of the individual state law issues complex, the process of discerning, interpreting, and deciding a half-dozen state-law claims could be described as undertaking to resolve a "complex issue of State law." 28 U.S.C. § 1367(c)(1).

(2) Araya's complaint, as interpreted by the District Court, raises issues that have not been directly confronted by D.C. courts, such as whether D.C. Code § 47-1431(a) (2001) conferred a private right of action, *see Henok*, 922 F. Supp. 2d at 124, as well as issues that have been resolved in conflicting ways by D.C. and federal courts, such as whether negligent misrepresentation requires a pre-existing confidential relationship, *compare* S*herman v. Adoption Center of*

*Washington, Inc.,* 741 A.2d 1031, 1037 (D.C. 1999) ("Negligent misrepresentation requires that the defendants made statements that they knew or should have known were false, and that they knew or should have known would induce reliance on the part of Sherman, and that did induce such reliance.") *and Kumar v. D.C. Water & Sewer Auth.,* 25 A.3d 9, 15 n.9 (D.C. 2011) ("To prove negligent misrepresentation, a plaintiff must show '(1) that [the defendant] made a false statement or omitted a fact that he had a duty to disclose; (2) that it involved a material issue; and (3) that [the plaintiff] reasonably relied upon the false statement or omission to his detriment . . . .'") (quoting *Redmond v. State Farm Ins. Co.,* 728 A.2d 1202, 1207 (D.C. 1999)) *with Choharis v. State Farm Fire and Cas. Co.,* 961 A.2d 1080, 1089 (D.C. 2008) ("[C]onduct occurring during the course of a contract dispute may be the subject of a fraudulent or negligent misrepresentation claim when there are facts separable from the terms of the contract upon which the tort may independently rest and when there is a duty independent of that arising out of the contract itself.").

As we concluded in *Edmondson*, "D.C. courts are better equipped to resolve the unsettled legal questions in this case." 48 F.3d at 1266. The District Court therefore had no choice but to remand. *Id.*; *see also, e.g.*, *Carver v. Nassau Cnty. Interim Fin. Auth.*, 730 F.3d 150, 154-55 (2d Cir. 2013) (abuse of discretion to retain supplemental jurisdiction over claim raising unresolved issue of state law); *Creighton v. City of Livingston*, 628 F. Supp. 2d 1199, 1218-19 (E.D. Cal. 2009) (declining to exercise supplemental jurisdiction over state-law claim where California courts had not yet decided whether private right of action existed).

This case is functionally indistinguishable from *Edmondson*. Here, as there, the District Court dismissed all

claims over which it had original jurisdiction; here, as there, "[t]here has been no trial of the common law claims," *Edmondson*, 48 F.3d at 1266; here, as there, the local claims involve novel and complex issues, *id.*; here, as there, "there seems little difference in convenience for the parties whether they litigate in D.C. or federal court," *id.* at 1267; and here, as there, the District Court had an obligation to exercise its discretion to remand the case to the District of Columbia courts once the federal question, like Elvis, had left the building.

## IV.

For the foregoing reasons, we affirm the District Court's order denying leave to amend Araya's complaint to add additional federal claims, vacate the District Court's orders relating to the state-law claims against Chase and Shapiro & Burson, and remand to the District Court with instructions to remand to Superior Court for determination of Araya's state-law claims against those parties.

*So ordered.*